Patricia D. RUSH, Plaintiff,

v.

McDONALD'S CORPORATION, Sharon Funston, and William Rose, Defendants.

No. IP 89–914–C.

United States District Court, S.D. Indiana, Indianapolis Division.

April 12, 1991.

Carolyn C. Coukos, Indianapolis, Ind., for plaintiff.

Mark W. Ford, David J. Carr, Johnson Smith Densborn Wright & Heath, Indianapolis, Ind., for defendants.

## ENTRY AND ORDER

McKINNEY, District Judge.

The plaintiff in this action, Patricia D. Rush,· was employed by defendant McDonald's Corporation as a word processor

technician from November 11, 1985, until her discharge on May 6, 1988.[1] Defendant Sharon Funston–Renihan was Rush's supervisor from January, 1988, until Rush's discharge. Defendant William Rose was a McDonald's regional manager and supervised the McDonald's office at which Rush worked.

Rush, a black woman, claims in her first amended complaint that she suffered various race-related discriminatory practices at the defendants' hands in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Specifically, Rush alleges that because of her race: (1) she was discharged; (2) she was intentionally and maliciously denied a promotion from a part-time position to a full-time position; (3) she was intentionally denied employment benefits; and (4) she was harassed and treated differently than white employees. Rush also asserts that McDonald's had a de facto policy of filling the word processor position with minorities and hiring minorities on a part-time basis more frequently than non-minorities.

In addition to these Title VII claims against McDonald's and Funston–Renihan, Rush claims defendants McDonald's and Rose violated § 1981 of the Civil Rights Act of 1870, 42 U.S.C. § 1981, by intentionally denying her a promotion from a part-time position to a full-time position because of her race. Rush also brings a cause of action under the Employee Retirement Income and Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), for wrongful denial of employee benefits.[2]

Numerous motions now pend in this cause. The defendants initially moved to dismiss the plaintiff's complaint in part, then subsequently filed a motion for summary judgment as to the entire action. In addition to these dispositive motions, the defendants filed separate motions for sanctions under Rules 11 and 16(f). Meanwhile, the plaintiff has sought leave to file a second amended complaint.[3]

## I. MOTION TO AMEND

Rush seeks leave to amend Count 3 of her complaint,[4] involving her ERISA claim. In support of her position, Rush states:

> In the course of discovery Rush developed additional evidence that bears on her ERISA claim, which was the reason she felt her ERISA claim should be clarified.... Evidence developed during discovery establishes that Rush's ERISA claim is best brought as a Section 510 claim (29 U.S.C. Sec. 1140). A section 510 claim is enforceable under ERISA Section 502 (29 U.S.C. Sec. 1132). Prior to discovery, the evidence available to Rush indicated that her claim should be brought under Section 502 itself.

(Plf.'s Brief in Supp. at 3).

The distinction between these ERISA provisions is easily discernable. Section

---

1. The complaint states that Rush was discharged May 6, 1988, and this is the date appearing on the termination memo given to the plaintiff. (*See* Rush Aff., Exh. D). However, for the purpose of clarification, this memo was given to Rush on May 5, 1988, when she was notified of her termination.

2. Rush's amended complaint also asserted she was wrongfully discharged in violation of Indiana public policy, as expressed in the Indiana Civil Rights Law (*Ind.Code* § 22–9–1–1 *et seq.*), and that as a result of the defendants' actions she suffered severe mental distress. However, pursuant to this Court's June 11, 1990, Order, and the parties' August 28, 1990, stipulation, these claims were dismissed with prejudice.

3. Also pending at this time is the defendants' motion to strike certain affidavits, the defendants' motion for an expedited pretrial conference, the defendants motion to strike the plaintiff's jury demand and bifurcate the trial, and the plaintiff's motion to compel admissions. Because of today's Order, the defendants' motion for an expedited pretrial conference is moot, as is the defendants' motion to bifurcate. Moreover, Plaintiff's motion to compel is moot in light of the defendants' response thereto, as evidenced by defendants' motion filed with this Court March 18, 1991. Finally, defendants' motion to strike is addressed to the extent necessary in the summary judgment portion of this Order.

4. The purported amended complaint also attempts to revive Rush's wrongful discharge claim. This portion of the purported amended complaint is moot in light of the parties' August 28, 1990, stipulation dismissing with prejudice Rush's wrongful discharge claim.

502 provides a civil remedy to recover benefits under an ERISA plan, whereas Section 510 (enforceable through Section 502) provides a statutory remedy against any person who interferes with rights under a plan. In support for her motion, Rush notes that Rule 15(a) provides that leave to amend should be "freely given when justice so requires."

The defendants strongly oppose Rush's attempts to file a second amended complaint. To fully comprehend the defendants' objection, a brief procedural review is required. The original complaint was filed August 18, 1989. On October 10, 1989, the defendants filed a motion for more definite statement, a portion of which was directed at Rush's ERISA claim. The Court granted this motion on December 4, 1989, and the plaintiff filed her amended complaint December 21, 1989. As to Rush's ERISA claim, the amended complaint did nothing more than reiterate the identical, scant paragraph the Court previously found deficient.

On June 5, 1990, the defendants filed a motion to dismiss specific portions of the plaintiff's complaint. This motion was in part directed at Rush's ERISA claim, and asserted that dismissal was required because Rush failed to exhaust her administrative remedies, because the action was brought against at least one improper defendant (Rose), and because Rush failed to allege she was a "participant" in McDonald's plan.

Subsequently, on July 25, 1990, Rush filed a motion for leave to amend and a proposed second amended complaint. This motion was filed about six weeks beyond the cut-off date for filing such motions set by the pretrial scheduling Order in this cause. After the defendants noted this fact in their opposing brief, Rush filed a motion to enlarge time to file a motion for leave to amend the complaint.

■ The brief supporting the plaintiff's motion states in notable part that Rush "regrettably neglected" to file a timely motion to enlarge time. The brief further states, "Rush's counsel is a solo practitioner without the staffing resources of Defendants' counsel. *She has an extremely busy practice."* (Brief in Supp. at 1) (emphasis added). The Court understands the difficulties facing a solo practitioner. However, a busy practice is no excuse for failing to file the proper motions on a client's behalf. Rule 1.3 of the Rules of Professional Conduct and the accompanying comment require lawyers to control their workload so that each client is adequately served.

■ The focus of inquiry, however, is not whether plaintiff's counsel has a busy schedule, but whether Rush should be permitted to file a third (second amended) complaint. On the basis of this procedural background, the defendants argue that allowing the second amended complaint to be filed would clearly prejudice them.

The defendants' argument is not without merit. Permitting Rush to file an amended complaint after a motion to dismiss an earlier complaint has been filed may result in prejudice. At a minimum the timing of the request to amend is unfortunate. This fact is magnified in recognition of the fact that the request to amend was made well beyond the cut-off date for doing so as clearly set forth in this Court's pretrial Order.

Nevertheless, the Court must not lose sight of the fact that Rule 15(a) provides in no uncertain terms that leave to amend shall be freely given when justice so requires, and courts have consistently enforced the plain language of the Rule. *See, e.g., Fort Howard Paper Co. v. Standard Havens, Inc.,* 901 F.2d 1373, 1379 (7th Cir.1990) (collecting cases). At the same time, however, Rule 15(a) "is not a license for carelessness or gamesmanship," for parties have an "interest in speedy resolution of their disputes without undue expense." *Id.* (quoting *Feldman v. Allegheny Intern., Inc.,* 850 F.2d 1217, 1225 (7th Cir.1988)).

This is a close case, and the defendants' argument in opposition to granting leave to amend is persuasive. However, the Court finds that Rush's ERISA claim is more properly brought, if at all, pursuant to Section 510, and this fact weighs in favor of

granting leave to amend. Moreover, the exhaustion argument defendants raise in support of their motion to dismiss the ERISA claim is subject to consideration based on the briefs now before the Court. Thus, allowing the amended complaint to be filed would not require additional briefing. Accordingly, Rush's motion to enlarge time is granted, as is Rush's motion for leave to amend, and the complaint is deemed filed.[5]

## II. MOTION TO DISMISS

Having found that the plaintiff should be permitted to file a second amended complaint, the question now is whether the complaint can withstand a Rule 12(b)(6) attack. In ruling on a motion to dismiss for failure to state a claim, this Court must accept the plaintiff's well-pleaded allegations as true, and must view these allegations in the light most favorable to the plaintiff. *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir.1987).

### A. *Title VII Claims*

As previously set forth, Rush claims the following Title VII violations: (1) she was discharged because of her race; (2) she was intentionally and maliciously denied a promotion from a part-time position to a full-time position because of her race; (3) she was intentionally denied employment benefits because of her race; (4) she was harassed and treated differently than white employees; and (5) McDonald's had a de facto policy of filling the word processor position with minorities and hiring minorities on a part-time basis more frequently than non-minorities.

■ The defendants first argue that to the extent Rush's Title VII claims exceed the scope of her employment discrimination charge filed with the Equal Employment Opportunity Commission ("EEOC"), the claims must be dismissed. Accordingly, the defendants argue that the only Title VII claim that Rush has properly exhaust-

ed is her claim that she was discharged because of her race.

In support of this argument, the defendants cite to *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1970), and related cases for the proposition that allegations in a plaintiff's complaint that fall beyond the reach of the plaintiff's prior EEOC charge of discrimination must be excluded by the Court. In *Sanchez*, the court concluded that the proper focus is on the scope of the EEOC investigation, rather than the precise words contained in the charge. *Id.* at 466.

In making this conclusion, the court explained:

[T]he purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC *fails* to achieve voluntary compliance will the matter ever become the subject of court action. Thus it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation. Within this statutory scheme, it is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

*Id.* (holding claims in the plaintiff's complaint were not beyond the scope of the charges filed with the EEOC).

The *Sanchez* court is not alone in applying the "scope of the charge" doctrine. *See also Combs v. C.A.R.E., Inc.*, 617 F.Supp. 1011 (E.D.Ark.1985) (citing *Sanchez* and holding limited scope of EEOC charge required dismissal of all Title VII claims except discriminatory termination); *Calcote v. Jacobsen Manufacturing Company*, 35 FEP 1581 (S.D.Miss.1984) (applying scope of the charge doctrine in holding

---

**5.** Of course, based on the parties' previously mentioned stipulation, the portion of the plaintiff's second amended complaint purporting to bring a claim for wrongful discharge (Count IV) is stricken, pursuant to Rule 12(f), for this claim already has been dismissed with prejudice.

the plaintiff could not assert any claim beyond discriminatory demotion and termination); *Hampson v. Thornton Fractional Township School District*, 41 EPD 606, 1986 WL 8369 (N.D.Ill.1986) (accord).

Rush responds to this argument by stating that the allegations in her EEOC charge can be interpreted broadly to include each of the Title VII claims in her complaint. Specifically, Rush states:

> While Rush's EEOC charge is not detailed and may be brief, it encompasses each of the allegations in her Amended Complaint, perhaps in a cursory fashion, but encompasses them nonetheless.... While no direct mention is made of benefits or the racial harassment, these are activities which can reasonably be interpreted to grow out of her charge.

(Plf.'s Response Brief at 4).

Rush points to *EEOC v. General Electric Co.*, 532 F.2d 359 (4th Cir.1976), in support of her position. In *General Electric*, the original EEOC charge alleged race discrimination, but sex discrimination was found during the EEOC investigation. The district court held the sex discrimination claims had to be dismissed. The Fourth Circuit reversed, holding that "the proceedings by the EEOC and the judicial suit may be as broad as the facts developed in a reasonable investigation of the charge will warrant...." *Id.* at 368.

However, *General Electric* is not conclusive. As the Fourth Circuit noted, in *General Electric* the material produced by the defendant during the course of the EEOC investigation made the sex discrimination claim "obvious." *Id.* at 369. The facts at bar do not present such a clear case.

More on point is the relevant Seventh Circuit standard as summarized by Judge Norgle in *E.E.O.C. v. World's Finest Chocolate, Inc.*, 701 F.Supp. 637 (N.D.Ill.1988). Citing *Babrocky v. Jewel Food Co. and Retail Meatcutters*, 773 F.2d 857 (7th Cir. 1985),[6] Judge Norgle wrote:

[A] complaint may not encompass allegations outside the predicate EEOC charge. However, all claims of discrimination are cognizable that are like or reasonably related to the allegations of the charge and growing out of such allegations. Furthermore, charges are to be construed with the utmost liberality, and an EEOC complaint contains factual statements only, which may implicate several types of illegal discrimination.

*World's Finest Chocolate*, 701 F.Supp. at 640 (citations omitted).

Thus, this Court must look beyond the formalistic language of the EEOC charge to identify all types of discrimination that have been implicated. As a starting point, the charge states:

> I began my employment as a Part-time word processor on November 11, 1985. I became a Full-time word processor on January 1, 1988. On May 6, 1988, I was told by Sharon Funston, Supervisor that I was being terminated. I believe I have been discriminated against because of my race, Black.

This charge is supplemented by Rush's EEOC affidavit, which states in relevant part, "I believe that McDonald's has continuously allowed white employees to advance in the company. Blacks have not been allowed to advance as quick." Finally, following the EEOC's deferral of Rush's claim, the Indiana Civil Rights Commission ("ICRC") concluded that Rush's "allegation of a discriminatory practice by Respondent in the area of employment on the basis of race *when (Plaintiff) was discharged* is found to be without merit."[7] (emphasis added).

Construing the charges of discrimination "with the utmost liberality," *World's Finest Chocolate*, 701 F.Supp. at 640, *Eggleston v. Chicago Journeyman Plumbers' Local Union No. 130*, 657 F.2d 890, 906 (7th Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982), the

---

**6.** It is worth noting that though the defendants cite *Sanchez*, 431 F.2d at 465, in support of their assertion that Rush's claims are beyond the scope of her EEOC charge, in fact the *Babrocky* court cited *Sanchez* for the proposition that

courts should not "exact such specific articulation and minuscule particularity in the context of Title VII." *Babrocky* at 866.

**7.** *See* ICRC finding dated April 6, 1989.

plaintiff has preserved her racial discharge claim, and the additional claim that she was denied a promotion from a part-time position to a full-time position because of her race. However, no additional claims have been preserved.

The affidavit contains no allegations regarding the other Title VII claims in Rush's complaint. Nor do the ICRC investigation and findings support the result Rush desires. Accordingly, to the extent Rush seeks judicial review of Title VII claims other than for race-based discharge and race-based denial of a promotion, she is precluded from doing so. "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge...." *Babrocky,* 773 F.2d at 863.

■ However, the Court *sua sponte* raises the issue whether these additional claims should be dismissed without prejudice, or whether partial summary judgment should be granted in the defendants' favor. In *Babrocky,* 773 F.2d at 864, the Seventh Circuit explained that "the district court's decision to dismiss those parts of the plaintiff's Title VII allegations supposedly not included in the EEOC charge should have resulted in partial summary judgment, not dismissal." Thus partial summary judgment appears to be the correct avenue.

The parties have implicitly conceded this fact, though not by citation to *Babrocky.* Instead, this implicit concession results from the parties' reference in their briefs to the EEOC charge, the EEOC supporting affidavit, and the ICRC finding—matters outside the face of the complaint. Rule 12(b) provides in relevant part:

If ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of pursuant to Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

*See also Mac's Eggs, Inc. v. Rite–Way Agri Distributors,* 656 F.Supp. 720 (N.D. Ind.1986) (noting submission of affidavits normally converts a motion to dismiss into a motion for summary judgment).

Thus, while the Court believes *Babrocky* requires that entry of partial summary judgment rather than merely an order of dismissal, the parties have not been expressly notified of this fact and given the opportunity to present additional evidence on this matter. Therefore, the Court now informs the parties of its intention to convert the defendants' motion to dismiss on this point into a motion for summary judgment. The parties may, if they wish, submit any additional evidentiary material to this Court on or before April 19, 1991.[8] Absent the submission of any additional material, summary judgment against the plaintiff on these remaining Title VII claims shall become effective without further action by this Court, and judgment shall enter accordingly.

■ The defendants make an additional argument in their motion to dismiss Rush's Title VII claim that needs attention. That is, the defendants argue that because Funston–Renihan was not named in the EEOC charge she is an improper defendant in this Title VII case.[9] The defendants contend only "McDonald's Corporation" was named in the charge. Citing *White v. North Louisiana Legal Assistance Corporation,* 468 F.Supp. 1347 (W.D.La.1979), the defendants argue, "[W]ithout being named in the

8. The Court wishes to emphasize that it does not seek additional argument from the parties on issues already decided. The sole purpose of this 10–day window is to submit Rule 56 material, previously not before the Court, that relates to Rush's Title VII claims found to be outside the ambit of the EEOC charge.

9. In the same breath as this argument, the defendants argue that Funston–Renihan is not an

"employer" within the meaning of Title VII. This argument is not explored, and it is difficult to understand why in fact the argument even was made. Pursuant to 42 U.S.C. § 2000e(b), an "employer" is defined in relevant part as "any agent" of a person otherwise defined as an employer, which McDonald's is. Thus, as McDonald's agent, Funston–Renihan is an employer for Title VII purposes.

charge, the individual has no notice, and no opportunity to participate in conciliation efforts." (Defs.' Brief in Supp. at 7–8).

Remembering again the words of Judge Norgle in *World's Finest Chocolate*, and construing the charges of discrimination with the utmost liberality, Funston–Renihan is properly named. Though Funston–Renihan is not named as a respondent in the EEOC charge, she is mentioned in the paragraph explaining the particulars of the charge. Moreover, Funston–Renihan repeatedly is named in the affidavit accompanying the EEOC charge. For example, Rush wrote that she was called into Funston–Renihan's office and terminated, and that during her employment Funston–Renihan "didn't allow blacks to talk to blacks." Accordingly, the motion to dismiss the Title VII claim as against Funston–Renihan is denied.

### B. *ERISA Claims*

The motion to dismiss seeks in part dismissal of the plaintiffs' ERISA claim (now brought pursuant to § 510). In support of this motion, the defendants argue: (1) Rush failed to allege she was a "participant" in McDonald's plan; (2) the action was brought against at least one improper defendant (Rose); and (3) dismissal is required because Rush failed to exhaust her administrative remedies. The defendants' first contention has been cured in the pleading of Rush's second amended complaint, and therefore is without merit.

#### 1. Improper defendant

■ As for the contention that Rose is improperly named, the defendants argue that the complaint is devoid of any allegation that Rose "administered the plan or had any discretionary authority or responsibility in the administration of the plan. Nor is there any indication that Mr. Rose served in any kind of a fiduciary position or as a trustee of an employee benefit plan." (Defs.' Brief in Supp. at 12).[10] Defendants' claim support for this position in *Brown v. Retirement Committee of Briggs & Strat-*

ton Retirement Plan, 575 F.Supp. 1073 (E.D.Wis.1983), and *Carter v. Montgomery Ward & Co.*, 76 F.R.D. 565 (E.D.Tenn. 1976).

A review of Rush's second amended complaint bears out the defendants' contention that Rush has not alleged that Rose administered the plan, had any discretionary authority or responsibility in the administration of the plan, or served as a fiduciary position or trustee of the plan. The complaint alleges only that Rose was a McDonald's regional manager and supervised the McDonald's office at which Rush worked. The question, however, is whether this deficiency is significant given that Rush now brings her ERISA claim under § 510 rather than § 502.

Allegations which the defendants claim are lacking are required in a § 502 claim for benefits. *See, e.g., Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989) (holding that in a recovery of benefits claim, only plan administrators and plan trustees may be held liable). However, whether a discharge or other discrimination violates fiduciary obligations or contractual rights is not dispositive of whether a § 510 violation has occurred. S. Bruce, *Pension Claims* 490–91 (1988). "When a Section 510 violation has occurred, recovery may be against the 'person' responsible for the interference. This is generally the employer, rather than the plan or plan fiduciaries." *Id.* at 500 (footnote omitted).

The *Carter* and *Brown* decisions relied upon by the defendants are § 502 cases, and therefore are not dispositive. This distinction is important for, as noted, a § 510 case usually is against the employer for interference with rights under a plan, whereas a § 502 claim is against a plan or its fiduciaries for denial of benefits. The ERISA count in Rush's second amended complaint alleges that Rose (and McDonald's) "discriminated against Plaintiff for the purpose of interfering with her right to be a participant in other of McDonald's employee benefit plans." (Com-

---

**10.** Almost as an aside, the defendants argue "[t]he same may also be true as to Defendant, McDonald's." (Defs.' Brief in Supp. at 12). As noted in footnote 11, *infra,* this argument is not developed and thus will not be explored.

plaint at 4). Accordingly, this allegation is sufficient for Rush to pursue her ERISA claim against Rose, and therefore the defendants' motion to dismiss the ERISA claim against Rose is denied.

### 2. Exhaustion

■ The defendants' next attack on the plaintiff's ERISA claim proves the most troublesome. That is, Rush's ERISA claim should be dismissed because of her failure to exhaust her administrative remedies under the plan. As recognized in *Treadwell v. John Hancock Mut. Life Ins. Co.*, 666 F.Supp. 278, 283 (D.Mass.1987), the circuit courts of appeal are split as to whether exhaustion is a prerequisite to bringing suit on an ERISA claim in federal court. The *Treadwell* court observed, "The Ninth and Third Circuits distinguish between plan-based claims and statute-based claims, and do not require exhaustion of intra-plan remedies for the latter. The Seventh and Eleventh Circuits, on the other hand, apply the exhaustion doctrine for both plan-based and statute-based claims." *Id.* (citations omitted).

Referring to the Seventh Circuit, the *Treadwell* court cited to *Kross v. Western Electric Co.*, 701 F.2d 1238 (7th Cir.1983). The parties in the case at bar also cite to *Kross,* though for different results. The defendants contend that *Kross* holds as follows: "Where the cause of action is couched in terms of an interference with rights to obtain benefits allegedly wrongfully denied ... exhaustion is ... required." (Defs.' Brief in Supp. at 11). The plaintiff, however, cites *Kross* for the proposition that, "[I]t is within the discretion of the trial court to decide whether exhaustion of administrative remedies is required prior to filing suit." (Plf.'s Answer Brief at 7).

A reading of *Kross* convinces this Court that the plaintiff's interpretation is correct, while the defendants' misses the mark. In *Kross,* the Seventh Circuit rejected the plaintiff's claim that the trial court abused its discretion in applying the exhaustion doctrine to bar review of his claim, stating, "We reject this argument and agree that strong federal policy expressed in case law, encouraging private resolution of ERISA-related disputes, mandates the application of the exhaustion doctrine in this case." *Id.* at 1244. In making this holding, the court specifically stated, "[A]pplication of the exhaustion doctrine in ERISA cases by requiring a claimant to exhaust administrative remedies prior to bringing suit *is a matter within the discretion of the trial court.*" *Id.* (emphasis added).

Thus, *Kross* does not require reflexive application of the exhaustion doctrine in ERISA cases, but instead provides that the trial court, in its discretion, may apply the doctrine. Moreover, the *Kross* decision has come under attack from several fronts. Most notably, in *Amaro v. Continental Can Co.*, 724 F.2d 747, 752 (9th Cir.1984), the Ninth Circuit stated that *Kross* was based upon a "flawed premise," and refused to follow it.

The extent to which this premise might be "flawed" is worth exploring. The *Amaro* court examined the authority upon which the exhaustion portion of *Kross* is founded, specifically, *Challenger v. Local Union No. 1 of International Bridge,* 619 F.2d 645 (7th Cir.1980), and *Amato v. Bernard,* 618 F.2d 559 (9th Cir.1980). This examination revealed that both *Challenger* and *Amato* involved pension plans with internal appeal procedures required by § 503 of ERISA.

In contrast, the *Amaro* plaintiffs had no such procedures available through which to bring their § 510 claims. As the Ninth Circuit observed, "We are faced solely with an alleged violation of a protection afforded by ERISA. There is no internal appeal procedure either mandated or recommended by ERISA to hear these claims." *Id.* at 751. Thus, the *Amaro* court concluded that an ERISA participant or beneficiary "is not required to exhaust grievance or arbitration procedures prior to bringing suit under Section 510 of ERISA." *Id.* at 752.

In this Court's view, the distinction made and conclusion reached in *Amaro* is sound. At least one district court from this circuit takes a similar view. In *Jess v. Pandick, Inc.*, 699 F.Supp. 698 (N.D.Ill.1988), Judge Bua declined to impose an exhaustion re-

quirement on a plaintiff bringing a claim under § 510 of ERISA. Judge Bua noted that the *Jess* plaintiff was not pursuing a claim for benefits, but instead sought "to prevent and redress [the defendant's] alleged discriminatory and wrongful conduct." *Id.* at 700. Accordingly, the court concluded, "This court will not require [the plaintiff] to exhaust administrative remedies where the clear inadequacy of those remedies makes the pursuit of them an exercise in futility." *Id.*

Similarly, to impose an exhaustion requirement on Rush would also be futile. The defendants feverishly argue that Rush should be made to exhaust her administrative remedies, yet noticeably fail to mention any of the administrative avenues that might have been available to her. This omission speaks loudly as to the lack of administrative remedies.

Accordingly, based on the facts of this case the Court finds the plaintiff should not be required to exhaust administrative remedies prior to bringing her § 510 claim. This decision is not in conflict with *Kross*, for in that case the Seventh Circuit specifically stated that the application of the exhaustion doctrine in ERISA cases "is a matter within the discretion of the trial court." *Id.* at 1244. Discretion in this case is properly exercised against the imposition of an exhaustion requirement, and therefore the defendants' motion to dismiss Rush's ERISA claim on this ground is denied.[11]

### III. MOTION FOR SUMMARY JUDGMENT

The defendants have moved for summary judgment against Rush's Title VII, § 1981, and ERISA claims. Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure. Rule 56(c) provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

■ When the standard embraced in Rule 56(c) is met summary judgment is mandatory. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The standard for summary judgment mirrors the standard under Rule 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. at 2511. Moreover, once the moving party has demonstrated the absence of any genuine factual issues, the nonmoving party may not merely rest upon the allegations or denials in its pleadings but must present specific facts showing that a genuine issue exists for trial. *Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1148 (7th Cir.1989).

#### A. *Title VII*

The defendants have moved for summary judgment as to each claimed Title VII violation asserted by Rush. For reasons previously set forth, the only Title VII claims now before the Court are Rush's contentions that because of her race she was discharged and she was denied a promotion from a part-time position to a full-time position.

##### 1. Discrimination in discharge

■ The defendants contend Rush cannot establish a prima facie case of discrimination in discharge pursuant to the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). According to this analysis, the plaintiff carries the initial bur-

---

11. The defendants' reply brief appears to make the additional argument that Rush's ERISA claim is more properly brought as a Title VII claim. (*See* Defs.' Reply Brief at 9). However, this argument is not explored in any detail, and the Court will not endeavor to research and evaluate arguments that litigants do not themselves find worthy of significant treatment.

den to prove by a preponderance of the evidence the prima facie case of discrimination. *Heerdink v. Amoco Oil Co.*, 919 F.2d 1256, 1259 (7th Cir.1990).

If the plaintiff succeeds in making out a prima facie case, an inference of discrimination is raised, which places on the defendant a burden of rebuttal met by articulating a legitimate, nondiscriminatory reason for the employment decision. *Id.* If the defendant successfully rebuts this inference, the plaintiff then must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are a pretext for discrimination. *Id.*

The showing a plaintiff must make to establish a prima facie case was set forth in *Yarbrough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 511 (7th Cir.1986),[12] as follows: (1) that she belongs to a racial minority; (2) that she was doing her job well enough to meet her employer's legitimate expectations; (3) that in spite of her performance she was discharged; and (4) that the employer sought a replacement for her. The defendants focus on the second and third prongs of this analysis, asserting poor job performance on Rush's part.

The undisputed facts of this case, as they relate to this analysis, are insightful. Rush was hired as a part time word processor at McDonald's regional Indianapolis office on November 11, 1985. On May 2, 1988, Rush failed to report for work because of a severe dandruff problem. This reason, however, was not communicated to Rush's employer. In fact, Rush did not call anyone at McDonald's that day to inform them of her absence, the reasons therefore, or her expected return date.

Instead, Rush asked her husband, Arthur, to call Funston–Renihan and inform her that Rush would not be at work because of "personal problems." (Rush Aff.

at 10). Funston–Renihan asked Arthur to have Rush call her, but Rush made no such call that day. (Funston–Renihan Dep. at 64). As for Rush's reason for not personally calling Funston–Renihan, she states, "We had only one car and no telephone ... (and) I wanted to tell her myself in person. I was embarrassed about it." (Rush Aff. at 10).

On Tuesday, the following day, Rush again failed to report to work. Rush again did not personally call her supervisor, and asked that her husband do so. About 9 a.m. Tuesday morning Arthur again called McDonald's on his wife's behalf, and again Funston–Renihan asked that Rush call her personally. Rush again failed to make the requested call. Rush's failure to personally call her work place was problematic in that in her absence her co-workers experienced difficulty in accessing information from the computer system, though the extent of these problems is disputed. (Funston–Renihan Dep. at 68–70). These problems prompted McDonald's to attempt to contact Rush by courier letter, but still no response was received.

Finally, Rush called the Indianapolis office on Wednesday and talked with Trish Kerr. Funston–Renihan was not in the Indianapolis office that day, but had left word for Rush to call her at the Fort Wayne office. Kerr instructed Rush to call Funston–Renihan at the Fort Wayne office. The testimony again is in dispute as to whether Funston–Renihan and Rush spoke Wednesday. Rush states that she talked with Funston–Renihan about 1 p.m. and set up a meeting for Thursday morning in the Indianapolis office. (Rush Aff. at 11). Funston–Renihan states that she did not talk with Rush until Thursday morning. (Funston–Renihan Dep. at 78; Defs.' Brief in Supp. at 10).[13]

---

**12.** Though *Yarbrough* involved a § 1981 claim, "[t]he same standards governing liability under Title VII apply to § 1981 claims." *Id.* at 511.

**13.** These disputes, while perhaps noteworthy, do not preclude the entry of summary judgment. The mere existence of a factual dispute is not by itself sufficient to bar summary judgment. A factual dispute does not preclude summary

judgment unless the disputed fact is outcome determinative. *Hossman v. Spradlin*, 812 F.2d 1019 (7th Cir.1987); *Howland v. Kilquist*, 833 F.2d 639 (7th Cir.1987). Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Clampitt v. Ft. Wayne*, 682 F.Supp. 401 (N.D.Ind.1988), *aff'd*, 864 F.2d 486 (7th Cir.1988).

In any event, following her unexplained, three-day absence, Rush arrived for work on Thursday morning, May 5, 1988. Funston–Renihan and Sharon Wilson from personnel questioned Rush regarding her absence, and at that time they first learned that a severe dandruff problem was the reason for Rush's failure to report to work. Rush was asked if she was treated by a doctor for this condition, and Rush replied that she had not seen a doctor, but that during the past three days she had gone to a hairdresser. (Funston–Renihan Dep. at 82; Rush Aff. at 11).

Funston–Renihan then left the room and returned shortly thereafter. At that time, she informed Rush that she was being terminated, and provided her with a memo outlining the reasons for the action. (Rush Aff., Exh. D). The memo cites violations of McDonald's policies as the reasons for Rush's termination. Specifically, the memo references Rush's failure to follow proper policies for reporting absences, and notes that these are "additional violations of McDonald's policies for which you have been warned and suspended in the past." (*Id.*).[14]

Rush states in her answer brief, "When Rush met with Funston–Renihan and Sharon Wilson on Thursday morning, May 5th, which is the day Rush was told she was fired, Rush disclosed, *for the first time*, the reason for her absence." (Plf.'s Answer Brief at 12) (emphasis added). Rush's argument, essentially, is that her firing must have been racially motivated because the defendants "could not have known the nature of the problem that caused Rush's three-day absence when they made the decision to fire her." (Plf.'s Answer Brief at 12).

This argument ignores the practical realities of the situation. Rush was absent from her job for three consecutive days without providing her employer with any justification for her absence. Rush states that when she finally went to work on Thursday morning she was "unaware that anything was wrong." (Plf.'s Answer Brief at 15; Rush Aff. at 11). This statement is telling. It stretches the imagination to presume that an employee could have an unexpected and unexcused absence from work for three consecutive days and be unaware that this might create a problem.

Yet many of Rush's arguments stretch the bounds of belief. For example, in her brief Rush also asserts that she "always received good performance reviews," yet admits that in February of 1987 she was suspended from her job for three days after Rush "became angry" at office manager Sheri Flinn. (Plf.'s Answer Brief at 7–8). This incident followed a December 1986 incident in which Rush received a verbal and written warning for unprofessional conduct.

Additionally, McDonald's personnel manager Cheryl Lozo found it necessary to speak with Rush in June of 1987 regarding concerns about Rush's "grooming" habits, and the effect this could have on promotional opportunities. (Flinn Aff., Exh. C). This conversation included such basic hygiene topics as bathing, washing hair, and cleaning nails and clothing.

▆▆▆▆ Accordingly, Rush has failed to make out a prima facie case that her discharge was racially motivated because she has not shown that she was doing her job well enough to meet her employer's legitimate expectations, or that in spite of her performance she was discharged.[15] *Yarbrough v. Tower Oldsmobile, Inc.*, 789

---

**14.** The memo states that the proper procedure for reporting absences includes: (1) personal and direct contact with office manager; (2) nature of absence and possible duration; and (3) information as to existing work. (Rush Aff., Exh. D). However, the attendance policy referenced in Exh. C of Rush's affidavit states, "If you are ill or are going to be very late, call the office manager at home by 7:30 a.m. and notify her at that time if there is pending work or a report at your desk which must be completed. If the office manager cannot be reached, leave a message at the office with her secretary." Rush places great significance on the discrepancies between the procedures set forth in the memo and those in Exh. C. The Court, however, does not.

**15.** One additional point worth noting is Rush's admission that after her discharge she was replaced by Elaine Bell, a black. (Plf.'s Answer Brief at 12–13).

F.2d 508, 511 (7th Cir.1986). Therefore, the defendants' motion for summary judgment as to Rush's Title VII claims for racially motivated discharge is granted.[16]

### 2. Discrimination in promotion

 The defendants again reference the *McDonnell Douglas* test in support of their position that Rush cannot make out a prima facie case of discrimination in not promoting Rush to a full-time position. The defendants argue, "[W]hat is glaringly absent from Ms. Rush's prima facie formula is the existence of a vacancy in the full-time wor[d] processor position." (Defs.' Brief in Supp. at 12).

It is undisputed that the job that Rush applied for and received was a part-time word processor position in the Indianapolis office. At the time Rush applied for this job, no full-time word processor position existed. Instead, McDonald's had two part-time positions. Marsha Dugan, a white employee, worked in the other part-time position. On January 1, 1988, McDonald's created a full-time word processor position. Rush was assigned to this position until she was terminated May 5, 1988.

Thus, the essence of Rush's discrimination in promotion claim under Title VII is her attack on McDonald's business decision prior to January 1, 1988, to have two part-time rather than one or more full-time word processor positions. William Rose, regional manager for McDonald's Indianapolis' office, explained that the decision to create the full-time position was made because McDonald's was moving its regional office, expanding the equipment in the word processing area, implementing a new computer system, and hiring additional employees. (Rose Dep. at 24–25).

In support of her claim, Rush states she submitted an application for a full-time position which "was rejected for a period of approximately two years. This establishes the third element of Rush's prima facie case, which is that her application was rejected." (Plf.'s Answer Brief at 25). Moreover, Rush argues that "no part of the *McDonnell Douglas–Burdine* prima facie model concerns whether a position is open," and therefore this fact can only be an explanation for the defendants' conduct. (Plf.'s Answer Brief. at 27).

Rush's argument ignores the fact that the *McDonnell Douglas* test "is flexible and may be adapted to the fact situation as appropriate." *Yarbrough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 511 n. 4 (7th Cir.1986). Moreover, in *Heerdink v. Amoco Oil Co.*, 919 F.2d 1256, 1259 (7th Cir. 1990), the Seventh Circuit stated that in a disparate treatment failure to hire case a proper component of the plaintiff's prima facie case is showing that "she applied for and was qualified for a job *for which the employer was seeking applicants.*" (emphasis added).

This obstacle is fatal to Rush's attempt to make out a prima facie case of discrimination in promotion. The job for which Rush applied did not exist, and the employer has offered legitimate, nondiscriminatory reasons why such a position was not created until January 1, 1988.[17] When the

---

**16.** The affidavits submitted by Rush on behalf of herself, Flinn, and Bell do not command a different result. First, the defendants have moved to strike these affidavits on the basis that they are made without personal knowledge, contain numerous hearsay problems, and are conclusive in nature. Without ruling on the affidavits one line at a time, it is sufficient to note that these affidavits have many problems, among them hearsay. Non-hearsay evidence must be used at summary judgment. *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 570 (7th Cir.1989). Second, a large portion of the affidavits are directed at various stray remarks in the work place. The Seventh Circuit recently held such remarks are insufficient when the comments are not related to the em-

ployent decision in question, and are not made by decision makers, and the record convincingly shows a non-discriminatory reason for the discharge. *McCarthy v. Kemper Life Ins. Co.*, 924 F.2d 683, 686–87 (7th Cir.1991) (affirming summary judgment in defendant's favor). This holding applies to the affidavit testimony submitted by Rush.

**17.** Thus, even assuming Rush has made out a prima facie case, the defendants have met their burden of proving that a legitimate, nondiscriminatory reason existed for their employment decision. Herein lies another obstacle for the plaintiff, for she has failed to show this reason is pretextual.

position was created, Rush obtained the post. Given these undisputed facts, the defendants' summary judgment is granted as to this portion of Rush's Title VII claim.

### B. *§ 1981*

 The defendants also have moved for summary judgment as to Rush's claim that defendants McDonald's and Rose violated § 1981 by intentionally denying her a promotion from a part-time position to a full-time position because of her race. Section 1981 guarantees a racially equal right to make and enforce contracts. *McKnight v. General Motors Corp.*, 908 F.2d 104, 117 (7th Cir.1990) (Fairchild, J., concurring in part and dissenting in part).

In support of their motion for summary judgment, the defendants argue in part, "Given that there was no full-time word processor position prior to Ms. Rush's assignment thereto and given that Ms. Rush was succeeded by a black female, Elaine Bell, as a full-time word processor, there is simply no evidence that McDonald's intentionally treated M[s]. Rush differently than other similarly-situated employees." (Defs.' Brief in Supp. at 27).

This argument is well taken, for the Court has herein found that as a matter of law Rush's Title VII claim for discrimination in promotion must fail, because the job for which Rush applied did not exist. The same result is mandated for Rush's § 1981 claim. Rush has failed to make argument or present evidence as to why a different result is required.

Furthermore, the Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), provides an additional ground for this result. *Patterson* forecloses § 1981 relief to plaintiffs unless they can show "the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer...." *Id.* at 185, 109 S.Ct. at 2377; *Bailey v. Northern Indiana Public Service Co.*, 910 F.2d 406, 409 (7th Cir.1990).

Determining what constitutes a new employment relation under *Patterson* is "difficult and unsettled." *McKnight*, 908 F.2d at 110. Yet job changes in one's "ordinary progression" with a company normally are insufficient to clear the *Patterson* hurdle. *McKnight* at 110. Judge Posner stated in *McKnight* that "it would be very odd to regard each rung on the career ladder as a different employment relation," and added, "The turn of the rotation wheel does not create a new employment relation at each stop." *Id.*

 In the case at bar, the issue is whether Rush's January 1, 1988, promotion from a part-time to a full-time position constituted a "new and distinct relation" between Rush and McDonald's.[18] The Court finds it did not. Rush merely had taken the first small step up the career ladder. A change in status from a part-time to a full-time employee, with the addition of benefits and increased wages, does not under the circumstances of this case create a new and distinct relation. While such a change is relevant in the *Patterson* analysis, it is insufficient to carry the day for Rush.

Rush did not advance from an employee to an officer or partner. *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1317–18 (7th Cir.1989). Nor did her new position involve managerial duties. *Bailey*, 910 F.2d at 410. Nor was she laid off and recalled, or transferred to another division. *McKnight*, 908 F.2d at 110. In short, Rush has failed to overcome the *Patterson* barrier, thus providing an additional ground for granting the defendants' summary judgment motion as to this claim.

### C. *ERISA*

 The defendants also have moved for summary judgment against Rush's ERISA claim. On a procedural note, when the summary judgment first was filed, Rush's ERISA claim was founded upon § 502. Pursuant to today's Order, Rush

---

**18.** Although the inquiry necessarily focuses in part on Rush's job as a full-time employee, ironically any claim Rush might have under § 1981 must involve the time period prior to January 1, 1988, when she received the promotion.

has been permitted to plead this claim as arising under § 510 of ERISA. However, the Court may properly consider whether Rush's § 510 claim survives summary judgment because the parties have briefed the § 510 claim for summary judgment purposes.[19]

In opposing Rush's ERISA claim, the defendants argue in relevant part:

> [Rush] was a part-time employee of McDonald's from November 1985 until January 1988 when she became a full-time word processor. As a part-timer she was eligible to receive certain benefits and not eligible for others. When she was assigned to a full-time position, Plaintiff was eligible for full-time benefits. Given this scenario, Ms. Rush simply is without a cause of action under ERISA.

(Defs.' Reply Brief in Supp. of Motion to Dismiss at 7).

Section 510 provides in relevant part, "It shall be unlawful for any person to ... discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled...." The Court already has determined that the full-time position that Rush sought did not even exist until January 1, 1988, that racial animus played no role in the non-existence of this post, and that when a full-time position was created Rush was chosen for the post. These undisputed facts show a lack of discrimination by the defendants, and thus are fatal to Rush's ERISA claim, just as they were to her Title VII claim of discrimination in promotion and her § 1981 claim.

The only authority Rush cites in support of her ERISA claim is *Ahne v. Allis–Chalmers Corp.*, 640 F.Supp. 912 (E.D.Wis. 1986). The plaintiffs in *Ahne* alleged *inter alia* that the defendants violated § 510 of ERISA by calculating their terminated employees' benefits based upon a temporary salary reduction that was in effect at the time of their firing. *Id.* at 915. The *Ahne* court held that the plaintiffs stated a valid cause of action under § 510. *Id.* at 920.

However, this holding is unavailing to Rush. The *Ahne* plaintiffs sought benefits which had vested and to which they became entitled through participation in an ERISA plan. In contrast, Rush seeks benefits for which she was not entitled as a part-time employee. Rush has not provided this Court with a single case which supports her theory that she may recover under ERISA because her employer failed to establish a full-time position in as timely a manner as she desired.

Accordingly, for all of these reasons, the defendants' motion for summary judgment as to Rush's ERISA claim is granted.

## IV. MOTIONS FOR SANCTIONS

As previously noted, the defendants have filed two separate sanctions motions, which the Court now addresses.

### A. *Rule 11 Sanctions*

Rule 11 seeks generally to curtail the filing of actions and pleadings of two distinct types: those that are frivolous, and those that are brought for an improper purpose. The defendants' Rule 11 motion concerns the former. The "frivolous clause" of Rule 11 is governed by an objective standard and is comprised of two subparts: (1) whether the party or attorney made a reasonable inquiry into the facts; and (2) whether the party or attorney made a reasonable inquiry into the law. *Cedar Crest Health Center, Inc. v. Bowen*, 129 F.R.D. 519, 522 (S.D.Ind.1989); *Insurance Ben. Administrators, Inc. v. Martin*, 871 F.2d 1354, 1358 (7th Cir.1989). Sanctions must be imposed when a Rule 11 violation has occurred. *Frantz v. United States*

---

**19.** In addition, the plaintiff has been afforded ample time to conduct discovery as to her ERISA claim. For example, in support of her request to file an amended complaint the plaintiff states, "In the course of discovery Rush developed additional evidence that bears on her ERISA claim, which was the reason she felt her ERISA claim should be clarified.... Evidence developed during discovery establishes that Rush's ERISA claim is best brought as a Section 510 claim ... Prior to discovery, the evidence available to Rush indicated that her claim should be brought under Section 502 itself." (Plf.'s Brief in Supp. at 3).

*Powerlifting Fed'n*, 836 F.2d 1063, 1065 (7th Cir.1987).

■ The defendants claim Rush's counsel, Carolyn Coukos, failed to make a reasonable inquiry into both the facts and the law prior to filing the instant action. More particularly, the defendants assert that sanctions are appropriate because: (1) Rush's Title VII claims exceeded the scope of her charge filed with the EEOC; (2) when Coukos filed her amended complaint she was unaware of whether an ERISA violation had occurred, and was dependent upon discovery to resolve this question; and (3) the state tort claims of intentional infliction of emotional distress and wrongful discharge clearly were barred by existing law.

Each of these assertions has merit. This Court already has found that some, though not all, of Rush's Title VII claims exceeded the scope of her EEOC charge. In addition, even an eleventh-hour amendment of Rush's ERISA claim was insufficient to save that claim from being summarily dismissed. Moreover, the defendants correctly note that Rush's pleadings in this case reflect the plaintiff was unsure of whether an ERISA claim existed, and hoped that discovery would show the way. (*See* Defs.' Brief in Supp. at 6).

Perhaps even more illustrative are the circumstances surrounding Rush's claim for intentional infliction of emotional distress. Without question, this claim against McDonald's is barred by *Fields v. Cummins Employees Federal Credit Union*, 540 N.E.2d 631 (Ind.App.1989). Thus, such a claim is frivolous. In addition, Coukos represented to this Court that the *Fields* decision was handed down *after* the filing of the original complaint.[20] In fact, *Fields* was decided July 6, 1989, and the complaint was filed August 18, 1989. Furthermore,

Rush's wrongful discharge claim is barred pursuant to Indiana's employment at will doctrine. Thus, this claim also is frivolous.

■ Rule 11 prohibits the filing of frivolous claims, and sanctions must be imposed when a Rule 11 violation has occurred. *Frantz v. United States Powerlifting Fed'n*, 836 F.2d 1063, 1065 (7th Cir. 1987). The fact that some Rush's claims survived a motion to dismiss is not dispositive, for an attorney who files a pleading containing one frivolous claim in an otherwise meritorious pleading still may be sanctioned under Rule 11. *Cross & Cross Properties, Ltd. v. Everett Allied Co.*, 886 F.2d 497, 505 (2d Cir.1989). Moreover, a plaintiff may not avoid sanctions under Rule 11 for filing an inadequately researched complaint by voluntarily dismissing the suit under Rule 41(a)(1)(i). *Cooter & Gell v. Hartmarx Corp.*, — U.S. —, 110 S.Ct. 2447, 2455, 110 L.Ed.2d 359 (1990).

In short, the conduct outlined herein is violative of Rule 11.[21] Thus, the Court must determine the appropriate sanction. A Court has great discretion in determining the appropriate sanction, and in making this choice "the least severe sanction that is adequate to serve the purpose should be imposed." *Cedar Crest*, 129 F.R.D. at 527. Available sanctions "range from an off-the-record reprimand to reprimand on the record, to monetary assessment or penalties." *Martin*, 871 F.2d at 1359.

■ The defendants claim that the appropriate sanction is an award of attorney fees incurred in defending plaintiff's "baseless" actions. (Defs.' Brief in Supp. at 12). In its discretion, however, the Court finds an award of attorney fees excessive. Undoubtedly Coukos' conduct has caused the defendants to incur some additional costs

---

**20.** Coukos states in her June 1, 1990, Motion to Dismiss her Claim of Intentional Infliction of Emotional Distress, *"Since the filing of her claim* ... a decision of the Indiana Court of Appeals held that an employee's exclusive remedy for such injuries against the employer is under the state's workers compensations laws." (emphasis added). In an affidavit submitted in response to defendants' Rule 11 motion, Coukos refers to

this as "an inadvertent misstatement." (Coukos Aff. at 4).

**21.** Given the obviously deficient nature of some of the plaintiff's claims, Coukos merely undermines her position by submitting an affidavit "as evidence that [counsel] has an extensive background in the area of the law that Rush's claims involve...." (Plf.'s Answer Brief at 4).

that might not otherwise have resulted. However, many of Coukos' actions cannot be described as "baseless," and therefore a less severe sanction is warranted.

Accordingly, the Court finds that both monetary and nonmonetary Rule 11 sanctions are appropriate. As for the nonmonetary sanction, a reprimand is proper, and this Order shall serve as such. As for the monetary sanction, Rule 54(d) gives this Court the discretion to award costs to prevailing parties, and the Court finds that awarding costs against Coukos and in the defendants' favor is a sufficient monetary sanction.[22] The "overarching objective" of Rule 11 can in some instances be achieved "by ordering cost shifting." 5A *Wright & Miller* § 1334 at 57 (1990).

### B. *Rule 16(f) Sanctions*

■ In addition to Rule 11 sanctions, the defendants also seek sanctions pursuant to Rule 16(f). The procedural background previously set forth in connection with the discussion regarding Rush's motion for leave to file an amended complaint is relevant to this sanctions motion. Essentially, the defendants argue that as a result of Rush's untimely motion for leave to amend, the defendants incurred expenses in drafting and filing needless motions.

While Rush's counsel should have filed her motion for leave to amend in a timely manner—or at least first filed a motion to enlarge the time in which to file it—the Court finds these circumstances do not warrant Rule 16(f) sanctions. Rush's counsel's failure to obey the pretrial Order in this cause did not involve the type of blatant misconduct for which sanctions were intended. Furthermore, the Court in fact allowed the filing of the second amended complaint, though this was a close question. Accordingly, the defendants' motion for Rule 16(f) sanctions is denied.

### V. CONCLUSION

Despite allowing the plaintiff to file three separate complaints, her claims must fail. As for her Title VII cause, only her claims of racial discharge and denial of promotion have been preserved for judicial review, and summary judgment against these claims is granted. Summary judgment also shall issue against the plaintiff's remaining Title VII claims unless the Court receives material on or before April 19, 1991, requiring a different result. Summary judgment also is granted as to the plaintiff's § 1981 and ERISA claims.

In addition, the defendants' motion for Rule 11 sanctions is granted, and plaintiff's counsel is reprimanded and Ordered to pay the defendants' costs of this action. The defendants' motion for Rule 16(f) sanctions is denied.

IT IS SO ORDERED this 12th day of April, 1991.

---

**22.** Though defendants may feel that an award of costs is an inadequate monetary sanction, it should be noted that "[v]arious circumstances may influence the award of costs in individual cases and result in the prevailing party not receiving costs." 10 *Wright & Miller* § 2667 at 192 (1983).