**Bettye HEERDINK, Plaintiff–Appellee,**

v.

**AMOCO OIL COMPANY,
Defendant–Appellant.**

**No. 89–2596.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 24, 1990.

Decided Dec. 10, 1990.

Rehearing and Rehearing En Banc
Denied Jan. 8, 1991.

---

Virginia M. O'Leary, Kimberly O'Leary, Deborah A. Howard, Darlene Robinson, Oakland City, Ind., for plaintiff-appellee.

George J. Zazas, Jay R. Larkin, Douglas J. Heckler, Barnes & Thornburg, Indianapolis, Ind., William O. Ligon, Chicago, Ill., for defendant-appellant.·

Before BAUER, Chief Judge, RIPPLE and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Bettye Heerdink believes that Amoco Oil Company failed to hire her when she applied for a truck driver position because she is a female. After Amoco hired three male drivers instead of Heerdink at their terminal in Evansville, Indiana, she filed a complaint alleging that Amoco intentionally discriminated against her because of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* The district court found that Amoco intentionally discriminated against Heerdink. Because we believe that there was error in the allocation of the burden of proof to the defendant and that the trial record fails to support the findings of dispositive facts, we reverse.

## I.

The energy crisis of the 1970s precipitated national efforts at energy conservation. Businesses and residents were encouraged to keep their thermostats below 65 degrees, the auto industry focused their efforts on developing smaller automobiles with better gas mileage, and the overall demand for petroleum products shrank as prices increased. The impact on Amoco was significant; their marketing and manufacturing businesses suffered substantial reductions, consequently, the demand for truck drivers in petroleum transport also declined. Amoco did not replace truck drivers who retired or resigned and some layoffs also were imposed. The Great Lakes region, including the terminal at Evansville, Indiana, experienced an overall reduction of 38% in the Amoco truck driver work force between 1977 and 1982. It was in this economic climate that Bettye Heerdink chose to apply for a truck driving position with a petroleum company.

Amoco decided to expand their Evansville terminal by one additional truck in the fall of 1979; two drivers were to be hired. Amoco permits terminal managers broad discretion in determining who, among those applicants who meet the minimum requirements for consideration, will be hired. Gene Stoltz, the terminal hiring manager at Evansville, hired one driver (William Hall) at the end of August, 1979 who was released within a month. Because of the unfortunate experience with this first hire and because an anticipated increase in petroleum transport activity did not materialize, Stoltz chose to wait until December, 1979 before hiring any additional drivers.

On July 23, 1979, Bettye Heerdink applied for a petroleum transport truck driver position with Amoco at the Evansville terminal. Amoco requires that all petroleum transport applicants have a minimum of 3,000 hours of truck driving experience and pass a Department of Transportation physical examination to qualify for consideration. Heerdink met the minimum requirements; she had three years of truck driving experience and had passed the DOT physical examination. However, she had never hauled petroleum or any other liquids or flammable cargo. Her application was retained by Amoco at least through the end of 1979.

Heerdink testified that Stoltz told her "he would consider someone with experience before he would consider her." [1] (Tr. vol. I at 44.) William Hall was hired on August 27, 1979. Hall had seven years of petroleum transport experience and had driven for Coastal Truck Lines where he gained experience with Amoco's terminal loading and unloading procedures, paperwork and locations. At the time of Hall's hiring, Amoco retained seven applications on file. Of the seven applicants considered in August, Heerdink was the only female and Hall was the only black. Amoco hired Hall because of his extensive driving experience, particularly in petroleum transport, and because he was a highly qualified minority applicant.[2] Amoco dismissed Hall soon after he was hired because of problems in performance.

Three more applicants applied for positions in November, 1979; all three applicants were males. In November or December of 1979, Amoco offered a position to applicant Allen Dike whose application had been retained on file since he originally submitted it in 1975. Like Hall, Dike had driven petroleum transports for at least six years and had experience with Amoco's terminal loading and unloading procedures, paperwork and locations. Stoltz originally had offered the position to Hall instead of Dike in July of 1979 to further the goals of

---

1. Although there was some dispute as to whether Stoltz told Heerdink this in August or after December, there was no factual determination on this issue. The timing of such a comment would go to the question of pretext; if the comment was made after December it might be more likely that such a comment was pretextual and created to "explain" the hiring of the two

males when Heerdink challenged the hirings as discriminatory.

2. The district court found that Mr. Hall was preferred over Mrs. Heerdink because he was a male, however, this conclusion is undercut by its other findings that "Mr. Hall **was more experienced than plaintiff** and he had hauled liquid petroleum." (Emphasis added).

Amoco's affirmative action program. Although Stoltz considered Dike to be at least as qualified as Hall, he did not offer Dike a position after Hall was dismissed until the position had been left vacant for more than two months.[3] Dike refused the November/December offer of employment from Amoco. Amoco subsequently offered the position to George Rupp, a driver with eight years of petroleum transport experience and familiarity with Amoco's terminal loading and unloading procedures, paperwork and locations. Amoco also offered a position to Larry Happe who had driven petroleum transports for sixteen years. Rupp and Happe applied for positions in November of 1979; at that time, Amoco had on file eight applications.

## II.

◼ This is a case of disparate treatment.[4] The Supreme Court developed a framework for allocating burdens of proof in a Title VII disparate treatment case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff carries the initial burden to prove by a preponderance of the evidence the prima facie case of discrimination. This burden is not onerous, but plaintiff must show that "(i) she belongs to a minority; (ii) she applied and was qualified for a job for which the employer was seeking applicants; (iii) that despite her qualifications she was rejected and; (iv) that after her rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824 (1973)). The prima facie case raises an inference of discrimination for which defendant carries a burden of rebuttal; defendant need only articulate

a legitimate, nondiscriminatory reason for the employee's rejection to successfully rebut this inference. *Id.* The plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. This burden of proof carried by plaintiff merges with the ultimate burden of persuading the court that the plaintiff has been intentionally discriminated against. *Burdine*, 450 U.S. at 257, 101 S.Ct. at 1095. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253, 101 S.Ct. at 1093.

In a Title VII disparate treatment case, "[t]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." *Id.* at 253 n. 8, 101 S.Ct. at 1094 n. 8. The Supreme Court has said that "where the defendant has done everything that would be required of him if the plaintiff made out a prima facie case, whether plaintiff really did so is no longer relevant." *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); *see also Kier v. Commercial Union Ins. Cos.*, 808 F.2d 1254, 1257 (7th Cir.1987) ("After a trial on the merits, 'disputes about the underlying prima facie case fall away.'") (quoting *Morgan v. South Bend Community School Corp.*, 797 F.2d 471, 480 (7th Cir.1986)). At trial, Amoco presented the evidence they deemed necessary to rebut a prima facie inference of intentional discrimination. Thus, in this opinion we will not discuss the prima facie case, *see McCluney v. Jos. Schlitz Brewing Co.*, 728 F.2d 924 (7th Cir.1984) (court will not consider

---

**3.** It is unclear, given this fact, what the basis was for the finding below that absent any discrimination Heerdink would have been hired no later than October 1, 1979. Dike would not have been hired until November and he, because of his record of experience, was more qualified than Heerdink.

**4.** The district court found that Stoltz' reliance on subjective "preferences" which **adversely impacted** on plaintiff was unacceptable and discriminatory. (Emphasis added.) However, as we noted this is a disparate treatment case—not an adverse impact case.

whether district court erred in determination of prima facie case where both sides offered evidence and district court had enough evidence to decide ultimate issue of intentional discrimination); but will focus on defendant's rebuttal and the ultimate question of intentional discrimination.

### A.

■ The district court erroneously placed a burden of proof upon defendant at the rebuttal stage stating that "defendant has failed to meet its **burden** of rebutting plaintiff's showing by **proving** a legitimate nondiscriminatory business reason for preferring to hire the male applicants instead of the plaintiff.... If the plaintiff establishes a prima facie case, the **burden of proof** then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the applicant's rejection." (Emphasis added.) The district court incorrectly assumed that defendant's burden of rebuttal carried with it a burden of proof; the defendant only bears a burden of production. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094. As the Supreme Court stated, "defendant bears only the burden of explaining clearly the nondiscriminatory reasons for its actions." *Id.* at 261, 101 S.Ct. at 1097. It is sufficient if the employer produces evidence which raises a genuine issue of fact as to whether it discriminated against the plaintiff. *Id.* As this court has said before, "[a] desire to hire the more experienced ... applicant is a nondiscriminatory, legitimate, and common reason on which to base a hiring decision." *Holder v. Old Ben Coal Co.*, 618 F.2d 1198 (7th Cir.1980). In this case, defendant successfully rebutted the prima facie inference of intentional discrimination by clearly explaining that Amoco offered positions to Hall, Dike, Happe and Rupp because they had more truck driving and petroleum transport experience than Heerdink.[5]

### B.

■ A pretext may be shown "either directly by persuading the court that a

discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The court below found that Amoco's reasons for not hiring Heerdink were a pretext for discriminating on the basis of sex. It concluded that Stoltz' preference for prior petroleum transport experience was a pretext to exclude female applicants such as plaintiff, and that Stoltz' explanation of his reasons for leaving the job open for ninety (90) days and for his selection of the two (2) white males in December, 1979 was not credible. We find that the evidence does not support either conclusion.

In this case, the district court determined that Heerdink was better qualified than the other applicants; but the evidence shows that Heerdink met only the *minimum* job requirements and that she had no experience hauling liquid petroleum or other explosive or flammable products. To conclude, based on the evidence presented, that Heerdink was equally or better qualified than those who were offered positions would require a relative weighing of her subjective qualifications by the district court. However, the courts do not "sit as a super-personnel department" or "determine whether the employer exercised prudent business judgment." *LaSalle Nat. Bank v. County of Du Page*, 856 F.2d 925 (7th Cir.1988), *cert. denied*, 489 U.S. 1081, 109 S.Ct. 1536, 103 L.Ed.2d 840 (1989) (quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987)). Review of job applications necessarily involves relative comparisons of objective and subjective qualifications, but such review is the domain of employers and not the courts. With respect to three measurable objective qualifications, specifically, each applicant's total truck driving experience, petroleum hauling experience and whether the applicant was experienced

---

5. We will not address the arguments put forth concerning the relationship between experience and safety since this court has made clear its position on the role of experience as an acceptable reason for hiring in a Title VII disparate treatment case. *See Holder*, 618 F.2d 1198.

with Amoco's procedures and paperwork, Heerdink obviously was not as qualified as the others who were offered positions. It is not appropriate for the courts to fetter management's discretion by substituting their own judgment as to proper hiring practices. *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978) (court cannot require businesses to adopt what it perceives to be the "best" hiring procedures). The evidence simply does not support the district court's finding that Heerdink was equally or better qualified than those applicants who were offered positions.[6] There is no evidence to support a finding that Amoco's preference for experienced applicants was a pretext for discrimination. Similarly, there is no evidence to support a finding that Amoco wanted to discriminate against Heerdink because of her sex and was thus motivated to offer positions to the other applicants who were better qualified than Heerdink.

The district court stated, "the defendant has further failed to ... otherwise show ... that better qualified males were available in September, 1979." The Supreme Court does not require this showing. "The employer has discretion to choose among equally qualified candidates...." *Burdine,* 450 U.S. at 261, 101 S.Ct. at 1097. But the evidence shows that Dike was better qualified than Heerdink and available in September, 1979; however, Amoco did not offer him a position until November or December of 1979. The more reasonable explanation for this delay in hiring (and one rejected without explanation by the magistrate) is that the precarious economic climate affected the timing of Stoltz' hiring decisions. Title VII was not intended to "diminish traditional management prerogatives." *Id.* at 257, 101 S.Ct. at 1096. Here, the district court substituted its judgment for that of Stoltz and determined that Stoltz should have hired another driver immediately after Hall's dismissal. This is an unnecessary intrusion upon management's discretion. The evidence demonstrates

that it was not unreasonable, given the instability of the petroleum business, for Stolz to have waited until November or December to hire additional drivers.

We recognize that there exists a potential for abuse when employers are granted broad discretion in determining whom they will hire. However, it would be impractical to require employers to list with particularity each objective and subjective qualification that will be considered and precisely how much weight will be assigned to each in the inevitably subjective relative comparisons of job applicants. By definition, the job applicant hired is the one most preferred by the employer. Here, there is no evidence that Stoltz based his hiring decision on any considerations other than non-discriminatory, legitimate business reasons.

### III.

The trial court's finding regarding discriminatory intent may be overturned only if shown to be clearly erroneous. *Germane v. Heckler,* 804 F.2d 366, 368 (7th Cir.1986) (citing *Batson v. Kentucky,* 476 U.S. 79, 98 n. 21, 106 S.Ct. 1712, 1724 n. 21, 90 L.Ed.2d 69 (1986)); *McCluney v. Jos. Schlitz Brewing Co.,* 728 F.2d 924, 927 (7th Cir.1984). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *McCluney v. Jos. Schlitz Brewing Co.,* 728 F.2d 924, 927 (7th Cir.1984) (quoting *Lee v. National Can Corp.,* 699 F.2d 932, 936 (7th Cir.1983), *cert. denied,* 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983)). The ultimate inquiry in a Title VII disparate treatment claim is whether discriminatory intent was a "but for" cause of the adverse action. *Germane v. Heckler,* 804 F.2d 366, 368 (7th Cir.1986). Thus, the evidence must demonstrate that sex was a determining factor in the sense that Heerdink would not have been rejected "but for" Amoco's motive to discriminate against her because of sex. *See Williams*

---

**6.** Clearly Heerdink and those offered positions all met the minimum job requirements designated by Amoco, however, it would be highly misleading to suggest that all applicants who meet the minimum requirements are equally qualified.

*v. Williams Electronics, Inc.*, 856 F.2d 920 (7th Cir.1988). We are convinced that the district court committed clear error by ignoring the obvious reason for not hiring plaintiff; the evidence unequivocally shows that the applicants who were offered positions had more total driving experience and more petroleum transport experience than did Heerdink. Heerdink's sex is not a "but for" reason for her rejection since the evidence supports not it, but another legitimate nondiscriminatory business reason for the rejection: Heerdink had significantly less experience in driving trucks than did the other applicants who were offered positions.

For the forgoing reasons, we REVERSE the district court's entry of judgment for plaintiff and REMAND for entry of judgment in favor of the defendant.