**Margie L. OSICKA, Plaintiff,**

v.

**SEARS, ROEBUCK & CO., Defendant.**

No. 93 C 7197.

United States District Court,
N.D. Illinois,
Eastern Division.

May 9, 1995.

Robert Stephen Minetz, Sarah S. Hirsen, Kevin Andrew Sterling, Cowan & Minetz, Chartered, Chicago, IL, for plaintiff.

Michael A. Stiegel, Paul Ely Starkman, Nancy Jeanne Montroy, Arnstein & Lehr, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Margie Osicka ("Osicka") sues defendant Sears, Roebuck & Co. ("Sears") alleging discrimination on the basis of sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (count I), breach of contract (count II), and promissory estoppel (count III). Osicka's claims arise out of Sears' failure to rehire her after she took an extended personal leave of absence and was subsequently terminated. Sears' motion for summary judgment is presently before the Court. For the reasons set forth below, Sears' motion for summary judgment on count I is granted. The Court's disposition of Osicka's Title VII count eliminates Osicka's sole basis for federal question jurisdiction. Osicka's remaining counts seek to invoke the Court's pendent jurisdiction, *see* Compl. ¶ 1; however, we decline to exercise jurisdiction over her remaining state-law claims.

## BACKGROUND

■ The following undisputed facts are gleaned from the parties' respective Local General Rule 12 statements of material facts and accompanying exhibits.[1]

---

1. Local Rule 12(M)(3) requires a party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue." The movant's statement must contain "specific references to affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth." Sears' statement shall be cited herein as "Def.'s Facts ¶ __." Similarly, Local Rule 12(N)(3)(a) requires the nonmoving party to file a concise response to the movant's statement including, in the case of any disagreement, specific references to supporting materials. Osicka's response shall be cited as "Pl.'s Facts ¶ __." Local Rule 12(N)(3)(b) authorizes the nonmoving party to submit a statement of "additional facts that require the denial of summary judgment"; pursuant to Local Rule 12(M), the moving party may then submit a response to the nonmoving party's additional facts. Osicka's statement of additional facts shall be cited as "Pl.'s Add'l Facts ¶ __" and Sears' response shall be cited as "Def.'s Resp. Add'l Facts ¶ __." All properly supported material facts set forth in either party's statement (i.e., Def.'s Facts or Pl.'s Add'l Facts) are deemed admitted unless properly controverted by the statement of the opposing party. Local Rule 12(M) and 12(N)(3)(b); *see also Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453 (7th Cir.1994); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir.1994); *Stewart v. McGinnis*, 5 F.3d 1031 (7th Cir.1993). Moreover, the mere denial of a particular fact without "specific references to the affidavits, parts of the record, and other supporting materials" that allegedly establish a factual dispute is insufficient; and, where a

Osicka began her employment with Sears in 1972 as a typist. By 1990, she had risen to the position of Buyer I with an income in excess of $90,000 per year. Pl.'s Facts ¶¶ 7, 8; Pl.'s Add'l Facts ¶ 6. In late May or June of 1990, Osicka approached William LoMonaco, the National Merchandise Manager for her department, and Michael Bass, the National Human Resource Manager for her department, about the possibility of taking an unpaid personal leave of absence in order to pursue her goal of becoming pregnant—a goal with respect to which she had been experiencing some difficulty. She was advised to think about it and be certain that taking a leave was what she wanted to do before going ahead. Pl.'s Facts ¶ 27; Osicka Dep. at 49–52. After some deliberation, she indicated that she wanted to take a leave of absence. Osicka talked to Bass two or three times about the terms of the leave, including its length, her employment status during the leave, and the status of other benefits, such as profit sharing and stock options. There was also specific discussion regarding Sears' inability to guarantee Osicka a position upon her return. Osicka Dep. at 58, 59. Sears granted Osicka's request for a leave.

At a mid-June meeting between LoMonaco, Bass and Osicka, shortly before she began her leave, Osicka reviewed Sears' Personal Leave of Absence Policy in the Sears employee manual, which provides for leaves of absence of up to 16 weeks (which may be extended by the Regional Human Resource Manager), where good cause is shown and the employee can be spared from his or her duties, and where the employee intends to return to work at Sears. The statement of policy contains the following express disclaimer: "A personal leave of absence is not a guarantee of re-employment. If no job is

available when associates wish to return, their employment will be terminated." Pl.'s Facts ¶ 26. During this meeting, Osicka signed a document prepared and countersigned by Bass that further outlined the terms of her leave of absence as follows:

1. We will extend your Leave of Absence for up to one year, maximum.

2. There is no guarantee of an assignment upon your return, however, every effort will be made to place you in an assignment. If there is no Buyer 1 position available, you will be placed in an Assistant Buyer assignment at an annual rate of $70,000, if such an opening is available.

3. You will be responsible for payments to continue coverage of medical and group life insurance.

Pl.'s Facts, ¶ 29. She also signed a document reproduced directly from the Sears Employee Manual entitled "Statement for Personal Leave of Absence" which provides, "I fully understand that my reinstatement following this leave of absence will depend upon the availability of a position for which I am qualified." *Id.*

Osicka was unsatisfied with the language providing that there would be no guarantee of employment upon her return, but was told that the language could not be removed, as it was required by company policy and a leave could not be granted without such language. Osicka Dep. at 59–64; Plaintiff's Facts ¶¶ 33, 34. LoMonaco had indicated to Osicka, that "given enough time he was sure that something would be found." Osicka Dep. at 61. "Enough time" meant "some months, a few month's time." *Id.* Osicka admits, however, that neither Bass nor LoMonaco promised

---

factual assertion is met with such a naked denial the fact may be deemed admitted. *Flaherty*, 31 F.3d at 453. In this regard, the Court notes that in several instances Osicka apparently purports to controvert Sears' factual assertions by stating that "she has no independent basis to admit or deny the statement." Obtaining such an independent basis is, of course, precisely the purpose of pretrial discovery; Osicka's failure to obtain whatever discovery is necessary to present her claims does not relieve her of her obligations under the Local Rules. Thus, in those instances where she does not adduce evidence to properly

controvert Sears' well-supported factual assertions—but instead states that she lacks an independent basis to deny the statement, that facts averred will be deemed admitted. The Court also takes this opportunity to note that both of the parties, in their respective responses to the other's statement of facts, occasionally remark that the fact averred is "not material" or "immaterial" to the issues in this case. Insofar as it is the Court's function, not that of the parties, to determine what facts are relevant, such remarks are entirely gratuitous.

her a job on her return. Pl.'s Facts ¶ 35. It is also undisputed that Osicka understood at the time that she signed the leave of absence documents that there was no guarantee of an assignment upon her return. Pl.'s Facts ¶ 40.

Osicka continued to work at Sears from June 19, 1990, until she began her leave on August 1, 1990. In January of 1991, Sears contacted Osicka to determine whether she wished to extend her leave of absence for an additional six months; additionally, at that same time, Osicka was informed that a position "might be opening coming up in the near, near future," Osicka Dep. at 77, although further details were not provided. *Id.*; Pl.'s Facts ¶ 52. At that time, Osicka extended her leave of absence until July 31, 1991. Osicka Dep. at 77. When asked if she would "have been interested in the position that was opening up in the near, near future," Osicka replied, "Probably not." Osicka Dep. at 77. Jim Smith was placed in an assistant buyer's position on March 16, 1991. This was a lateral move, and not a promotion for Smith, who was a highly regarded candidate. Bass Dep. at 27. The decision to place Smith in the position was made by Bass and LoMonaco. Pl.'s Facts ¶ 62. It was Sears' understanding that Osicka was unavailable for the position at the time that it was open. Pl.'s Facts ¶¶ 54, 55.[2]

During the early part of 1991, Sears was in the process of reorganizing and in March of 1991 massive layoffs occurred. During the term of her leave, Osicka was aware that Sears' reorganization had resulted in a reduction in the number of positions in the retail buying organization. Specifically, people were being laid off and jobs at the buyer and assistant buyer levels were being consolidated. Def.'s Facts ¶¶ 68–70.

Osicka spoke with Bass on April 2, 1991 and met with him on April 30, 1991 regarding her return to work. During the April 30 conversation, she reported that she would be ready to return to work in early June after she returned from a trip to Europe. Pl.'s Facts ¶ 73. Osicka told Bass that she would call him when she returned to the United States. Pl.'s Facts ¶ 76. During that conversation, Bass informed Osicka that positions were scarce, that there was a major reorganization and that perhaps she should look elsewhere for employment. Pl.'s Facts ¶ 77. When Osicka departed for Europe, she did not leave Bass a number at which she could be reached or make other arrangements for contact. Early in May, about the time Osicka departed for Europe, a buyer position became available. The position was filled by Mark Manock on May 16, 1991. Pl.'s Facts ¶¶ 80, 81. The position was a lateral move for Manock. Pl.'s Facts ¶ 85. When asked during his deposition why Osicka was not offered the job that went to Manock, Bass testified, "She wasn't available." Bass Dep. at 38.[3]

Osicka returned to the United States on about June 10, 1991, and called Bass a day or two later to report, for the first time, that she was ready to return to work. Pl.'s Facts ¶ 88. He told her that he was not aware of any available positions, that Sears was having a lot of consolidations and layoffs, and that a practice was being followed of giving priority to active employees over inactive employees when an opening occurred. Pl.'s Facts ¶¶ 89–92. Other human resource and management personnel from Sears, deposed in this case, acknowledged that there was an unwritten or informal practice at Sears during the restructuring to the effect that active employees were considered over inactive em-

---

**2.** In response to Sears' assertion that "It was Sears understanding that the plaintiff was not available at the time the position was open," Def.'s Facts ¶ 54, Osicka responds: "The plaintiff denies the statement in paragraph 54 to the extent that she was not informed of the open assistant buyer position at this time. Plaintiff testified that if she had known of the availability of the position that went to Jim Smith it would have influenced her decision to go to Czechoslovakia later that spring." Pl.'s Facts ¶ 54. This response does nothing to materially controvert Sears' factual assertion—which concerned Sears'

understanding concerning Osicka's availability. Moreover, the Court notes that Osicka's deposition testimony was that she did not know whether the information would have influenced her decision to leave the country. Osicka Dep. at 101. Hence the assertion is deemed admitted.

**3.** Although there is some "buck passing" apparent in the deposition testimony, it is also clear that Bass had input into the decision to hire Manock. *See* Bass Dep. at 36–37; Eldridge Dep. at 15–16.

ployees. Def.'s Facts ¶ 101.[4] Bass advised Osicka of this practice on several occasions. Pl.'s Facts ¶¶ 102, 103.

Bass testified that he sent a memo around to several other department heads advising them that Osicka had returned from leave and was looking for a position. Pl.'s Facts ¶ 104. He also circulated Osicka's profile to human resource personnel in several groups. Pl.'s Facts ¶ 110A. No positions became available, and Osicka was terminated on July 31, 1991, at the end of her one year leave of absence, pursuant to Sears' leave of absence policy and the agreement she had signed the previous June.

Effective November 1, 1991, Jeff Whitehead, an active Sears employee, was placed in an assistant buyer position as his prior position was being consolidated and not replaced. The decision to hire Whitehead was made by Bass and LoMonaco. Pl.'s Add'l Facts ¶¶ 60, 61. Also at that time, Robert Vacko, another active Sears employee, was placed in a Buyer position in the catalog department. Although Vacko's previous position was not being eliminated, it was part of a shuffle of positions in which one position elsewhere in the company was eliminated. Def.'s Resp. Add'l Facts ¶ 74. David Loomis, National Merchandise Manager for Catalog Home Improvement, and Curt Pradelt, Human Resource Manager, were responsible for placing Vacko in the Buyer position. Def.'s Facts ¶ 115.

Bass contends that he continued to consider Osicka for positions through the Spring of 1992, when he was transferred, but she was not rehired. After her claims of discrimination were rejected by the Equal Employment Opportunity Commission in August of 1993, Osicka filed the instant suit.

## ANALYSIS

### Summary Judgment Standards

 Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view all evidence in a light most favorable to the nonmoving party, *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987), and draw all inferences in the nonmovant's favor. *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir.1990). However, if the evidence is merely colorable, or is not significantly probative or merely raises "some metaphysical doubt as to the material facts," summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Flip Side Productions, Inc. v. Jam Productions, Ltd.*, 843 F.2d 1024, 1032 (7th Cir.), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). In making its determination, the court's sole function is to determine whether sufficient evidence exists to support a verdict in the nonmovant's favor. Credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513. In an employment discrimination suit, where credibility and intent are crucial issues, these standards are applied with added rigor. *Robinson v. PPG Indus., Inc.*, 23 F.3d 1159, 1162 (7th Cir.1994).

## COUNT I: TITLE VII SEX DISCRIMINATION

### Title VII Standards

 Osicka's ultimate burden with respect to her Title VII claim is to establish that

---

4. To be sure, the practice of placing active employees over inactive employees was something less than a formal Sears human resource policy. Nevertheless, LoMonaco testified that it was his personal practice, *see* LoMonaco Dep. at 34–35, and others indicated that as a practical matter they also preferred active employees over inactive employees, *see, e.g.*, Pradelt Dep. at 16–18, 20–22; Loomis Dep. at 32–34; McLaughlin Dep. at 16–17. To the extent that any of the deponents denied the existence of such a policy, it is clear that the testimony only goes so far as establishing the absence of a formal policy; the testimony does not, however, controvert that placement decisions were guided, in practice, by a preference for active employees.

Sears intentionally discriminated against her on the basis of her sex. Osicka may satisfy this burden either by adducing direct evidence of discrimination or by presenting circumstantial evidence of discrimination—including resort to the indirect, burden-shifting method of proof articulated in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994); *Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 522 (7th Cir.1994); *see also Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 569 (7th Cir.1989) (noting that the direct and *McDonnell Douglas* methods constitute two distinct evidentiary paths for proving the ultimate issue of discriminatory intent). Because Osicka has adduced no direct evidence of discrimination, we evaluate her Title VII claim under the *McDonnell Douglas* burden-shifting method of analysis.

▇▇▇▇ Under the indirect "burden-shifting" approach of *McDonnell Douglas*, Osicka may establish a *prima facie* case of discrimination by showing that: (1) she is in the protected class; (2) she applied for and was qualified for the job; (3) she was nevertheless not hired; and, (4) after her rejection, the position remained open and the defendant continued to seek applicants from persons of plaintiff's qualifications or filled the position with a man. *See McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824; *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Heerdink v. Amoco Oil Co.*, 919 F.2d 1256, 1259 (7th Cir.1990), *cert. denied*, 501 U.S. 1217, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991); *Bailey v. Northern Indiana Pub. Serv. Co.*, 910 F.2d 406 (7th Cir.1990).[5] If Osicka succeeds in making this *prima facie* showing, a rebuttable presumption of discrimination arises and the burden of production shifts to Sears to articulate a legitimate nondiscriminatory justification for its action. *Burdine*, 450 U.S. at 254, 101

S.Ct. at 1094. If Sears meets this burden of production, the presumption is rebutted and the burden falls on Osicka to prove that the proffered reasons are a pretext—that is, not the true reason for the employment action. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. Pretext may be shown by showing either that a discriminatory intent more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. *LaMontagne*, 750 F.2d at 1409. At all times, Osicka retains the ultimate burden of persuasion that she was the victim of intentional discrimination.

### Osicka's Claim of Discrimination

▇▇▇▇ Osicka's Title VII claim cannot survive the application of the foregoing summary judgment standards that this Court must apply. In the first place, two of the positions for which Osicka claims she should have been hired were filled before she had communicated a readiness to return to work. Jim Smith was placed in an assistant buyer's position on March 16, 1991, and Mark Manock filled a buyer position on May 16, 1991. It is uncontroverted that Osicka did not communicate her readiness to return to work until June 11 or 12, 1991, and that Sears did not consider Osicka available for work when these two positions were filled. These uncontroverted facts defeat Osicka's claims for two reasons. First, in view of the fact that Osicka had not indicated a readiness to return to work until mid-June of 1991, the Court cannot conclude that she satisfies her *prima facie* showing—specifically, Osicka cannot establish that she "applied" for these positions. Second, even if the Court were to conclude that Osicka satisfied her initial burden, she cannot overcome Sears' legitimate and nondiscriminatory explanation for why it hired Smith and Manock—namely, that it did not consider Osicka available for work. Osicka's admission that Sears did not consider her available for work completely undermines her claim that Sears' decision to hire

---

5. The elements of a *prima facie* case, of course, vary with the circumstances of the alleged discrimination. *See McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. Because this case turns on Sears' failure to reemploy Osicka after her leave of absence, Osicka's *prima facie* showing ultimately involves establishing

that she is a female who was qualified for but denied reemployment, while males on leave of absence and with a similar work history were reemployed. *Cf. Timms v. Frank*, 953 F.2d 281, 286 (7th Cir.), *cert. denied* 504 U.S. 957, 112 S.Ct. 2307, 119 L.Ed.2d 228, (1992); *Jones v. Frank*, 973 F.2d 673 (8th Cir.1992).

Smith and Manock was the result of gender-based animus. By admitting that Sears did not consider her available for work, Osicka effectively concedes that her gender was not a determining factor in these decisions. *Cf. Skagen v. Sears, Roebuck & Co.,* 910 F.2d 1498, 1500–01 (7th Cir.1990) (finding that where plaintiff admitted that age was not a determining factor, he could not prove discrimination through either direct or indirect proof).

In her memorandum opposing Sears' motion for summary judgment, Osicka makes no effort to specifically address what is plainly a legitimate and nondiscriminatory justification—*viz.,* Sears' perception that she was unavailable for work; however, in her response to Sears' statement of material facts Osicka somewhat vaguely implies that had she known about the openings, she might have made herself available for work at an earlier date. However, this is entirely beside the point. The issue is not whether Osicka might have returned to work at an earlier date; instead, the issue is whether Sears legitimately believed that Osicka was unavailable. And, on this latter point there can be no debate because Osicka has admitted the fact.

With respect to the positions that were filled on November 1, 1991, after Osicka was terminated (on July 31, 1991), her Title VII claim fares no better. Sears maintains that the decisions to place Whitehead and Vacko into the positions rather than Osicka reflected a practice of filling open positions with active employees. Osicka has done nothing absolutely nothing to suggest that this nondiscriminatory justification is pretextual.[6] Indeed, her memorandum in opposition to Sears' motion for summary judgment

is virtually silent on the issue. The closest Osicka comes to challenging the legitimacy of Sears' proffered reason is in her response to Sears' statement of material facts where she states that on direct examination during their depositions, several human resource and management personnel testified that no policy of placing active employees over inactive employees existed, and that it was only upon friendly cross-examination that the testimony of these witnesses supported the existence of such a practice. *See* Pl.'s Facts ¶ 101. However, this Court has carefully reviewed all of the deposition testimony in question and finds that the record amply supports Sears' claim that during Sears' period of downsizing and reorganization, human resource decisions were guided by an informal practice of giving preference to active employees. Although Osicka is quite correct in observing that during direct examination, several of the deponents denied that there was a policy of preferring active employees, the cross-examination brought to light that that testimony merely spoke to whether there was such a formal policy. However, quite apart from the existence or not of a *formal* policy it is clear that the relevant decision makers followed an informal practice of preferring active employees. *See* Loomis Dep. at 32, 34; LoMonaco Dep. at 33–35, 40. And, Osicka has made no showing whatsoever that this practice was a pretext for gender discrimination. In particular, the Court has carefully examined Osicka's claim that various inconsistencies in Sears' witnesses's testimony create a genuine issue as to pretext. *See* Pl.'s Mem.Opp.Summ.J. at 5.[7] After reviewing alleged inconsistencies, the Court finds that Osicka has either identified testimony that is either not "inconsistent" or immaterial to the

---

6. Sears has framed the issue as involving Osicka's *prima facie* showing; that is, that Osicka was not "similarly situated" to Whitehead and Vacko because they were active employees and she was not—hence she cannot establish that she was treated worse than similarly situated males. For purposes of this opinion, it is inconsequential whether we analyze this issue as one involving Osicka's *prima facie* showing or the question pretext. However, we note that the Court's ultimate decision in this case is bolstered by the fact that Osicka has made no showing whatsoever

that inactive (for whatever reason) male employees were treated more favorably than was she.

7. Osicka has made no effort to identify what the alleged inconsistencies are or how they bear on Sears' proffered nondiscriminatory justification; instead, she simply asserts, "the testimony by Sears' witnesses is inconsistent on numerous facts regarding Ms. Osicka," and then string cites a number of references to her Rule 12(N) statement. *See* Pl.'s Mem.Opp.Summ.J. at 5.

issue of whether Sears' proffered justification is pretext.[8]

■ Finally, we note that Osicka's efforts at establishing that she was better qualified than the men who were placed in the buying positions she feels she should have received are somewhat misplaced. The antidiscrimination laws do not require that the most qualified applicant be placed in available positions. Rather, those laws simply prohibit employers from taking impermissible factors into consideration. As the Ninth Circuit explained in the context of an age discrimination action: "The ADEA does not make it unlawful for an employer to do a poor job of selecting employees. It merely makes it unlawful to discriminate on the basis of age." *Cotton v. City of Alameda,* 812 F.2d 1245, 1249 (9th Cir.1987). So long as Sears did not consider Osicka's gender as a factor when considering applicants for available positions, the fact that Sears may have chosen to place a less qualified applicant in a position is a matter of business judgment that this Court will not question. The court is cognizant that a federal court hearing a discrimination case 'does not sit as super-personnel department that reexamines an entity's business decisions.' *Tibbitts v. Van Den Bergh Foods Co.,* 859 F.Supp. 1168, 1175 (N.D.Ill.1994) (quoting *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464–65 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987)); *see also Heerdink,* 919 F.2d at 1260 (noting that federal courts do not "determine whether the employer exercised prudent business judgment") (internal quotes and citations omitted). In the instant case, Sears has articulated legitimate, non-discriminatory justifications for not placing Osicka into a position and she has not raised a genuine issue of material fact as to pretext. Accordingly, the Court finds that summary judgment must therefore be granted in favor of Sears on Osicka's Title VII claims.

*Osicka's Breach of Contract and Promissory Estoppel Claims*

■ Osicka's remaining counts assert state-law breach of contract (count II) and promissory estoppel (count III) claims. However, having determined that Sears is entitled to summary judgment on Osicka's federal claim—thus disposing of the federal basis of jurisdiction in this case, the Court shall decline to exercise its supplemental jurisdiction over these remaining state-law claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well."). Having considered the factors of judicial economy, convenience, fairness and comity, the Court does not find this to be one of those unusual cases in which federal decision of the state-law claims is warranted despite the Court's dismissal of the federal law claims. *See Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1251 (7th Cir.1994). There is no statute of limitations issue here in light of the Illinois savings statute, nor have substantial judicial resources already been committed such that transferring the case to another court will cause substantial duplication of effort—thus, retaining the case will not result in a significant savings of judicial resources. Finally, the Court does not believe that it is absolutely clear how the supplemental claims will be decided. Although it would appear that Osicka faces some tall hurdles, the result in this case is far from preordained. Accordingly, this case falls squarely within the general rule that "when all federal claims are dismissed before trial, the pendant claims should be left to the state courts." *Wright,* 29 F.3d at 1252.

### CONCLUSION

For the foregoing reasons, Sears' motion for summary judgement is granted in part. Summary judgment is granted as to count I, which is hereby dismissed with prejudice.

---

8. In this regard, we note in particular that Osicka contends that the fact that Sears' witnesses have stated that she was considered and rejected for the positions belies Sears' claim that she was not placed because she was either unavailable or inactive. *See* Pl.'s Mem.Opp.Summ.J. at 4–5. However, we find this argument unpersuasive: It is completely consistent to say that Sears "considered" Osicka on the one hand, but rejected her because she was either unavailable or inactive on the other.

Counts II and III are dismissed without prejudice for lack of jurisdiction. This action is therefore dismissed in its entirety.