**Lynda LEWIS–WEBB, Plaintiff,**

v.

**QUALICO STEEL CO., INC., Defendant.**

**Civ. A. No. 95–D–369–S.**

United States District Court,
M.D. Alabama,
Southern Division.

March 29, 1996.

Marion F. Walker, Birmingham, AL, for plaintiff.

David J. Middlebrooks, Albert Loring Vreeland, II, Lehr, Middlebrooks, Price & Proctor, P.C., Birmingham, AL, Steven Kay Brackin, Lewis, Brackin & Flowers, Dothan, AL, for defendant.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is defendant Qualico Steel Co., Inc.'s ("Qualico") motion for summary judgment filed September 29, 1995. Plaintiff Lynda–Lewis Webb ("Webb") alleges that Qualico discriminated against her based upon her sex by not hiring her for employment in June 1994. Webb brings her lawsuit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that Qualico's motion is due to be granted.

## JURISDICTION

Based upon 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 2000e–5(f)(3), the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue. Additionally, under Title VII and the Equal Employment Oppor-

tunity Commission's ("EEOC") regulations, a plaintiff must fulfill two jurisdictional requirements before filing a complaint in federal court. The court finds, and Qualico has not contested, that Webb (1) timely filed a charge of discrimination with the EEOC and, (2) after receiving a right-to-sue letter from the EEOC, timely instituted this action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973); Pl.'s Compl. at ¶ 14.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510;

*see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* at 587, 106 S.Ct. at 1356; *see also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

## FINDINGS OF FACT

Qualico ran an advertisement in the *Dothan Eagle* on June 16, 1994, to announce several job openings. The advertisement read:

> **Qualico Steel Co.,** a structural steel fabricator in Webb, AL is hiring for the following positions: Flux Core fillet welders, Flux Core 100% Full Penetration welders, Sub–Arc welders, Fitters, lay-out persons, painters, & computerized machine operator/programmers. Apply in person @

Hwy 52 East, Webb, AL or call (205) 793–1290.

Pl.'s Opp. Summ. J., Ex. 1. After reading this advertisement, Webb went to Qualico and applied for a position as a painter. Webb completed an application and then was interviewed for the position. About the interview, Webb asserts that

> [w]hen I sat down ..., the interviewer took a pen or pencil and scratched a line through my application that was in his lap. I gave him my resume in an envelope[,] which he never looked at[,] and at the end of the interview[,] threw back across the desk at me. His tone throughout the interview was bored and dismissive, and the interview lasted. less than two (2) minutes.

Pl.'s Aff. at 1–2.

When asked at her deposition the facts upon which she based her sex discrimination claim, Webb testified as follows:

> A. He wouldn't interview me. He wouldn't read my resume.... He just looked at me. That is what he saw.
>
> Q. [D]oes anything else lead you to believe that you were not hired because of your sex?
>
> A. Maybe the tone of his voice talking about "his men."
>
> Q. What was the tone of his voice?
>
> A. I took it to understand that with the inference of, "my men," that he was partial to men, hiring men.
>
> Q. What about the way he said that led you to believe?
>
> A. It was just the tone of voice in speaking.
>
> Q. What was the tone of his voice?
>
> A. I'm not sure that I can describe it.
>
> Q. By referring to "his men," you are talking about when he said his men cleaned their own guns?
>
> A. His voice was rather sarcastic. Okay?

Q. Am I correct, though, that you are referring to when the interviewer said his men cleaned ... their own guns?

A. Yes.

.    .    .    .    .

Q. At any other time during your conversation with the interviewer, did he refer to "his men"?

A. No.

Q. Can you tell me anything else about the tone other than it was sarcastic?

A. No.

Pl.'s Dep. at 39–41.

Qualico asserts that Webb did not possess the minimal skills needed to perform a job as a painter. Qualico states that since 1992, it has required that any person hired as a painter have previous experience painting structural steel in a production environment. The evidence reveals that since 1992, those persons hired by Qualico as painters had between two-and-a-half and eighteen years experience as painters. All painters at Qualico who did not have previous structural steel experience became painters by first working as painter's helpers.[1]

During her interview, Webb stated "that she had painted aircraft and automobiles and many other different things." Pl.'s Compl. at ¶ 8. Prior to her application with Qualico, Webb's painting experience consisted of working for Hayes Aircraft Corporation (where she painted aircraft), Sikorsky Support Services (where she "painted anything that needed painting," including hangars), and Webb Auto Body Shop (where she painted cars). Pl.'s Dep. at 53–56, 65–67.

Webb did not indicate during her interview or on her application that she had any experience painting structural steel:

> Q. Did you tell the interviewer that you had any experience in painting structural steel?
>
> A. No.

---

1. Depending on the availability, Qualico hires as painter's helpers persons who have some painting experience, but not the requisite experience in painting production structural steel. As time and workload permit, painter's helpers are allowed to perform some painting tasks under the supervision of painters. Over several years, if these persons show sufficient aptitude at painting structural steel, Qualico asserts that they can become painters. In fact, the evidence reveals that all of Qualico's painters who did not have the requisite qualifications when initially hired began their employment as painter's helpers.

Q. Did you write down on your application that you had any experience in painting structural steel?

A. No.

Pl.'s Dep. at 104–05. As Webb was exiting the interview, the interviewer informed her that since she had experience with painting, Qualico sometimes hired painter's helper, but that the pay was only $5.00 per hour. Webb stated that she was not interested in that particular position. The position for which Webb interviewed ultimately was filled by Lester Doyle, a former employee of Qualico. Prior to being hired for this position, Doyle worked with Qualico as a production structural steel painter on several occasions since 1987 and, according to Qualico, has always performed well.

## DISCUSSION

### I. Title VII's Legal Framework

■ In an action alleging disparate treatment under Title VII, a plaintiff must prove an intentional discriminatory motive by presenting either direct or circumstantial evidence. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 519, 113 S.Ct. 2742, 2754, 125 L.Ed.2d 407 (1993); *see e.g., Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 771–72 (11th Cir.1982). Absent direct evidence, as here, a plaintiff can establish intentional discrimination under the three-part burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Under the *McDonnell Douglas* and *Burdine* framework, the plaintiff first must raise an inference of sex discrimination by establishing a prima facie case. *Batey v. Stone*, 24 F.3d 1330, 1333 (11th Cir.1994) (citation omitted). For Webb to establish a prima facie case of sex discrimination in hiring, she must show that she: (1) belongs to a protected class; (2) applied for a position for which the employer was seeking applicants; (3) was qualified for the position; (4) was rejected; and (5) after her rejection, the position remained open and the employer continued to seek applicants from persons of her qualifications. *Hill v. Seaboard Coast Line Railroad Co.*, 885 F.2d 804, 808 (11th Cir.1989).

■ As a female, Webb certainly is within a protected class as defined by Title VII; she sought a position for which Qualico was accepting applications; she was rejected; and Qualico continued hiring for this position and, in fact, filled the position with a male. The only element of the prima facie case that Qualico challenges is the third one. That is, Qualico argues that Webb has failed to show that she possessed the minimal qualifications for the painter position. The court agrees.

The undisputed evidence shows that at least since 1992, Qualico requires, and only hires, painters with prior experience painting steel structures in a production environment. The undisputed evidence further shows that Webb simply did not possess this experience. Webb contends that her experience painting hangar airplanes is comparable to that of painting steel structures. Webb, in essence, argues that because Qualico has never hired a person with a background of painting airplanes, it cannot possibly know if an individual with this type of experience is qualified to paint steel structures or not. Webb's argument, a very weak one at best, cannot relieve her of the burden of meeting the undisputed minimum qualifications. Webb has offered no evidence to show that Qualico's minimal qualifications are in any way gender biased, nor has she identified anyone who was hired by Qualico as a painter but who did not have experience painting structural steel in a production environment. All the record reveals is that Webb was not hired because her experience was not the type sought after by Qualico.

■ The only inquiry is whether Qualico's decision not to hire Webb was discriminatory, not whether Qualico's minimal job qualifications or hiring decisions are reasonable or based on solid ground. The court does not " 'sit as a super-personnel department' or 'determine whether the employer exercised prudent business judgment.' " *Heerdink v. Amoco Oil Co.*, 919 F.2d 1256, 1260 (7th Cir.1990), *cert. denied*, 501 U.S.

1217, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991) (quoting *LaSalle Nat. Bank v. County of DuPage,* 856 F.2d 925 (7th Cir.1988), *cert. denied,* 489 U.S. 1081, 109 S.Ct. 1536, 103 L.Ed.2d 840 (1989)); *see also Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). "It is not appropriate for the court[ ] to fetter management's discretion by substituting [its] own judgment as to proper hiring practices." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978) (brackets supplied).

Thus, the court should not, and will not, require Qualico to adopt what the court perceives to be the best hiring procedures. Qualico can base its employment decisions on any considerations as long as they are not discriminatory. In other words, an employer may refuse to hire an employee for good reasons, bad reasons, reasons based on erroneous facts, or for no reason at all, as long as its actions are not based on discriminatory purposes. *See Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984). Even assuming, *arguendo,* that Webb can make out a prima facie case of sex discrimination, the court finds that Webb has failed to establish that her lack of qualifications was a mere pretext for sex discrimination. If a plaintiff succeeds in showing a prima facie case of discrimination, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment decision. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The defendant's burden is "exceedingly light," *Perryman,* 698 F.2d at 1142, as it "must merely proffer non-gender based reasons, not prove them." *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1019

(11th Cir.1994) (citation omitted) (brackets supplied).

Once the defendant satisfies its burden of production, the *McDonnell Douglas* framework, with its presumptions and burdens, drops out of the case, and the only inquiry becomes "whether [the] plaintiff has proven 'that the employer intentionally discriminated against' him because of his [gender]." *St. Mary's,* 509 U.S. at 510, 113 S.Ct. at 2749. To prove discrimination after the *McDonnell Douglas* framework drops out, a plaintiff can show (by either presentation of evidence or cross-examination of defendant's witnesses) that the defendant's proffered reason was a pretext for discrimination, "[b]ut a reason cannot be proved to be 'a pretext *for discrimination'* unless it is shown *both* that the reason was false, and that discrimination was the real reason."[2] *Id.* at 515, 113 S.Ct. at 2752.

Webb has failed to offer proof that Qualico's legitimate, nondiscriminatory reason for not hiring her—i.e., her lack of qualifications—is a pretext for sex discrimination. The court's inquiry at this stage must focus upon whether Qualico has provided a plausible explanation of its decision not to hire Webb, as the Eleventh Circuit has held that it is the perception of the decisionmaker which is relevant. *Smith,* 618 F.2d at 1067; *Krenik v. County of Le Sueur,* 47 F.3d 953, 960 (8th Cir.1995). That is, Webb's beliefs as to her qualifications are irrelevant, rather she must produce evidence demonstrating that Wal–Mart's asserted reasons are, in actuality, a cover-up to discriminate against her on the basis of her sex.

Here, the court finds that Qualico has shown that Webb did not possess the skills

**2.** *St. Mary's* clarified the Supreme Court's holding in *McDonnell Douglas* regarding the proof required to prevail in a Title VII case where a plaintiff presents circumstantial evidence of discrimination. Lower courts interpreting *McDonnell Douglas,* including the Court of Appeals for the Eleventh Circuit, had found that a plaintiff could satisfy his or her Title VII burden of proof "indirectly by showing that the employer's proffered explanation [was] unworthy of belief." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1529 (11th Cir.1992) (holding that the plaintiff satisfied his burden by showing that the

employer's reasons were unworthy of credence); *Caban–Wheeler v. Elsea,* 904 F.2d 1549, 1554 (11th Cir.1990) (same). In other words, "the falsity of the employer's explanation [was] *alone enough* to compel judgment for the plaintiff." *St. Mary's,* 509 U.S. at 517, 113 S.Ct. at 2752 (emphasis supplied). *St Mary's,* however, made it clear that a plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason" ... and "it is not enough ... to disbelieve the employer...." *Id.* at 512 n. 4, 113 S.Ct. at 2749 n. 4 (emphasis supplied).

for which it was looking. *See Smith v. Horner,* 839 F.2d 1530, 1538 (11th Cir.1988) (*quoting Clark v. Huntsville Bd. of Educ.,* 717 F.2d 525, 527 (11th Cir.1983)) (holding that where "an employer selects the person it believes is best qualified, an argument of pretext ordinarily will fail"). Qualico has explained in length that because of potential costly consequences resulting from painting mistakes, Qualico seeks painters who "have done it before." James Downs' Aff. at 2. Qualico also has stated in detail why painting hangar airplanes is not similar to painting steel structures. For instance, Qualico states that Webb only painted the second coating on a hangar. In contrast, Qualico asserts that its painters are responsible for applying the base coat to structural steel, the coat which runs the risk of bubbling and peeling if applied incorrectly. In Qualico's determination, Webb simply "had not done it before."

Moreover, the undisputed evidence reveals that Qualico was not seeking an individual who it would have to train but, rather, sought a person with experience who could begin work immediately. As Webb has never painted structural steel in a production environment, Qualico felt that Webb was not qualified for the position. Qualico does not violate Title VII by refusing to hire a person that it believes is not qualified, nor does it violate Title VII by choosing a more qualified male candidate unless it did so with discriminatory intent. *Burdine,* 450 U.S. at 259, 101 S.Ct. at 1097. The court has found no discriminatory intent in this case.

As evidence of pretext, Webb raises the following points about the interviewer: (1) his tone of voice; (2) the interviewer marking a line through her application at the beginning of the interview; (3) the speed of the interview; and (4) a reference to how "his men" performed their jobs. The court finds that none of these reasons relate to sex, or show either that the qualification requirement is not true or that Qualico's real reason was sex discrimination.

The court finds that the interviewer's single statement that "his men" cleaned their own paint guns was a general observation about the responsibilities of the position for which Webb was applying and did not suggest sexual animus. Likewise, the court finds that Webb's complaints about the speed and tone of the interview and the line through her application bear little, if any, indication of sex discrimination. The court is aware of no authority which requires an interviewer to smile and/or conform his mannerisms to that which the person interviewed deems acceptable. Even if her interpretation of these so-called gender actions somehow implicated sex discrimination, Webb's speculation about the interviewer's motive are insufficient to establish pretext: "Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions or rumors; discrimination law would be unmanageable if disgruntled employees could defeat summary judgment by speculating about the defendant's motives." *Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1146 (7th Cir.1994). Accordingly, the court finds that Webb's unsubstantiated inferences are not evidence of sex discrimination.

Finally, Webb takes exception to the interviewer's comment about the possibility of working as a painter's helper, to which Webb responded that she was not interested. Contrary to Webb's claims, this conversation demonstrates that Webb was not treated less favorably than similarly situated males. As discussed *supra,* Qualico will only hire people as painters if they have experience painting structural steel in a production environment but will hire less experienced individuals as painter's helpers. Thus, by proposing this possibility, which Webb refused, Qualico appears to have treated Webb as it had others who did not have the experience painting structural steel.

## CONCLUSION

While summary judgment is often not appropriate where intent is at issue, "[u]nsupported allegations as to motive do not confer talismanic immunity from Rule 56" of the *Federal Rules of Civil Procedure. Ross,* 759 F.2d at 365. Because Webb cannot state a prima facie case of sex discrimination and without proof of pretext, Webb cannot meet her ultimate burden of showing a genuine

issue of material fact as to intentional discrimination. Accordingly, the court finds that summary judgment is due to be granted in favor of Qualico. A judgment in accordance with the memorandum opinion shall be entered separately.